David R. West, WSBA #13680
Donald B. Scaramastra, WSBA #21416
Victoria M. Slade, WSBA #44597
Mark B. Feldman, Of Counsel
GARVEY SCHUBERT BARER
1191 Second Ave., 18th Floor
Seattle, WA  98101
Phone: (206) 464-3939
Fax: (206) 464-0125
Attorneys for Defendants

Chief Judge Ricardo Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PERIENNE DE JARAY,

        Plaintiff,

   v.

ATTORNEY GENERAL OF CANADA
FOR HER MAJESTY THE QUEEN,
CANADIAN BORDER SERVICES
AGENCY, GLOBAL AFFAIRS CANADA
fka DEPARTMENT OF FOREIGN
AFFAIRS AND INTERNATIONAL
TRADE CANADA, GEORGE WEBB,
KEVIN VARGA, and PATRICK LISKA,

        Defendants.

NO. 2:16-cv-00571-RSM

**DEFENDANTS' MOTION TO
DISMISS COMPLAINT**

<u>Note on motion calendar</u>:
Friday, October 28, 2016
(pursuant to Dkt. 14)

DEFENDANTS' MOTION TO DISMISS COMPLAINT
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND MOTION ................................................................... 1

II.   FACTS ......................................................................................................... 1

III.  ARGUMENT AND AUTHORITIES ............................................................ 4

     A.    Plaintiff's Claims Fail on the Face of the Complaint Under Rule 12(b)(6) and Rule 12(b)(1). ............................................................................. 4

     B.    This Court Has No Jurisdiction over the Claims Against Canada and the Government Defendants Under the FSIA. ........................................ 5

          1.   Plaintiff Cannot Satisfy the Non-Commercial Tort Exception of the FSIA. .......................................................................... 7

              a.    All Allegedly Tortious Conduct Falls Within the Discretionary Function Exception. ....................................... 7

              b.    Plaintiff's Claims Are Barred Because They Arise out of Allegations of Misrepresentation and Malicious Prosecution. ........................................................................... 11

          2.   No Other FSIA Exceptions Apply to Plaintiff's Claims. ............ 13

     C.    The Individual Defendants Are Immune from Jurisdiction Under the Common Law Rule of Official Acts Immunity. ................................... 13

     D.    The Court Lacks Subject Matter Jurisdiction over the Claims Against Individual Defendants Under the Alien Tort Statute. ........................... 15

          1.   Plaintiff Had No Right of Safe Conduct Under International Law, and None Was Violated by Defendants. .................................... 16

          2.   The Inter-American Convention Against Terrorism Does Not Apply in This Case and Is Not a Basis for a Private Right of Action Under U.S. Treaty Law. ................................................ 18

     E.    The Court Should Dismiss This Action for Improper Venue. ................. 19

          1.   Canada Is an Adequate Alternative Forum in This Case. ............ 20

          2.   The Private and Public Interest Factors Weigh Heavily in Favor of Dismissal. .......................................................................... 20

     F.    This Action Is Barred by the Act of State Doctrine. ........................... 22

     G.    Plaintiff's Suit Should Be Dismissed on Grounds of International Comity. ............................................................................................ 23

IV.  CONCLUSION .......................................................................................... 24

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

# TABLE OF AUTHORITIES

**Page**

## Cases

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989)............................ 5
*Arteaga-Ruiz v. United States*, 164 F. Supp. 3d 1198 (D. Idaho 2016) ................................... 8
*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964)................................................. 22, 23
*Belhas v. Ya'alon*, 515 F.3d 1279 (D.C. Cir. 2008) ............................................................... 14
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).......................................................... 5, 6
*Blaxland v. Com. Dir. of Public Prosecutions*, 323 F.3d 1198 (9th Cir. 2003) ................. 11, 12
*Boston Telecomm. Grp., Inc. v. Wood*, 588 F.3d 1201 (9th Cir. 2009)................................... 19
*Cabiri v. Gov't of Ghana*, 165 F.3d 193 (2d Cir. 1999)....................................................... 12
*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011) ........................... 19
*Chiudian v. Philippine National Bank*, 912 F.2d 1095 (9th Cir. 1990) ............................... 13
*Doe 1 v. Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005)............................................................. 22
*Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009) .......................................................... 8, 10, 11
*F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004)..................................... 23
*Foster v. Neilson*, 27 U.S. 253 (1829) ................................................................................. 18
*Fotso v. Republic of Cameroon*, 2013 WL 3006338 (D. Or. June 11, 2013)....................... 15
*General Dynamics Corp. v. United States*, 139 F.3d 1280 (9th Cir. 1998) ......................... 9
*Gray v. Bell*, 712 F.2d 490 (D.C. Cir. 1983) ....................................................................... 9
*Hilsenrath v. Swiss Confederation*, 2007 WL 3119833 (N.D. Cal. Oct. 23, 2007),
         *aff'd*, 402 F. App'x 314 (9th Cir. 2010) ................................................................. 9
*Hilton v. Guyot*, 159 U.S. 113 (1895)................................................................................. 23
*In re Estate of Marcos Human Rights Litig.*, 25 F.3d 1467 (9th Cir. 1994) ....................... 15
*In re Republic of Philippines*, 309 F.3d 1143 (9th Cir. 2002).............................................. 6
*In re Vitamin C Antitrust Litigation*, 2016 WL 5017312 (2d Cir. Sept. 20, 2016) ............. 23
*Int'l Ass'n of Machinists and Aerospace Workers v. OPEC*, 649 F.2d 1354 (9th Cir.
         1989)....................................................................................................................... 22
*Kellerman v. Inter Island Launch*, 2015 WL 6620604 (W.D. Wash. Oct. 30, 2015) ............. 19
*Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764 (9th Cir. 1991)................... 20
*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) ........................................ 20, 21, 22
*Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ........................... 4
*Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009) ............................................................... 13-14
*Medellin v. Texas*, 552 U.S. 491 (2008) ............................................................................. 19
*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008)................................ 5
*Mireskandari v. Mayne*, 2016 WL 1165896 (C.D. Cal. Mar. 23, 2016)................................. 13
*Mujica v. Air Scan*, 771 F.3d 580 (9th Cir. 2014) ....................................................... 16, 23, 24
*Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000) ......................................................... 11
*Oetjen v. Central Leather Co.*, 246 U.S. 297 (1918)............................................................. 22
*Olsen v. Government of Mexico*, 729 F.2d 641 (9th Cir. 1984) ............................................. 8
*Phaneuf v. Republic of Indonesia*, 106 F.3d 302 (9th Cir. 1997)........................................... 6
*Randolph v. Budget Rent–A–Car*, 97 F.3d 319 (9th Cir. 1996) ........................................... 7

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

*Richardson v. Att'y Gen. of the British Virgin Is.*, 2013 WL 4494975 (D.V.I. Aug. 20, 2013)..............................................................................................................15
*Risk v. Halvorsen*, 936 F.2d 393 (9th Cir. 1991)...........................................7, 8, 10
*Risk v. Kingdom of Norway,* 707 F. Supp. 1159 (N.D. Cal. 1989)........................7, 8
*Rosenberg v. Lashkar-e-Taiba*, 980 F. Supp. 2d 336 (E.D.N.Y. 2013) ....................14
*Sabow v. U.S.*, 93 F.3d 1445 (9th Cir. 1996).............................................................8
*Samantar v. Yousuf*, 560 U.S. 305 (2010) .......................................................13, 15
*Sarei v. Rio Tinto*, 671 F.3d 736 (9th Cir. 2011), *vacated,* 133 S. Ct. 1995 (2013), *aff'd on remand,* 722 F.3d 1109 (9th Cir. 2013)..................................................16
*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ...........................................................5
*Smith v. Ghana Commercial Bank, Ltd.*, 2012 WL 2930462 (D. Minn. June 18, 2012) ..........15
*Soldano v. United States*, 453 F.3d 1140 (9th Cir. 2006)...........................................8
*Sosa v. Alvarez – Machain*, 542 U.S. 692 (2004) ...................................... 15, 17, 19
*Spectrum Stores v. Citgo Petroleum Corp.*, 632 F.3d 938 (5th Cir. 2011) ...............22
*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011).............................................................6
*Taveras v. Taveraz*, 477 F.3d 767 (7th Cir. 2007) ...................................................17
*Terenkian v. Republic of Iraq*, 694 F.3d 1122 (9th Cir. 2012)....................................5
*The Queen v. Cook*, [1997] 1 S.C.R. 1113 (Can.) ...................................................10
*Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597 (9th Cir. 1976)..............23
*Underhill v. Hernandez*, 168 U.S. 250 (1897) .......................................... 13, 22, 23
*Ungaro-Benares v. Dresdner Bank AG*, 379 F.3d 1227 (11th Cir. 2004)..................23
*United States v. Gaubert*, 499 U.S. 315 (1991) ........................................................8
*United States v. Percheman*, 32 U.S. 51 (1833) ......................................................18
*United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797 (1984)..............8
*Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983)..................................6
*Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689 (9th Cir. 2009) .............................21
*W.S. Kirkpatrick Co. v. Environmental Tectonics Corp.*, 493 U.S. 400 (1990)..........22
*Weiming Chen v. Ying-jeou Ma*, 2013 WL 4437607 (S.D.N.Y. Aug. 19, 2013) .......15
*World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154 (D.C. Cir. 2002)..........22

**Statutes**

Alien Tort Statute, 28 U.S.C. § 1350 .....................................................................*passim*
Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-11 ....................................*passim*
28 U.S.C. § 1603 ..........................................................................................................6
28 U.S.C. § 1604 ..........................................................................................................5
28 U.S.C. § 1605 ........................................................................................ 5, 6, 7, 11, 12
28 U.S.C. § 2680(a) ......................................................................................................8

**Regulations**

8 C.F.R. § 214.2(1) ......................................................................................................2

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................6, 18
Fed. R. Civ. P. 12(b)(1) ..........................................................................................1, 5
Fed. R. Civ. P. 12(b)(2) ................................................................................................1

DEFENDANTS' MOTION TO DISMISS COMPLAINT - iii
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

Fed. R. Civ. P. 12(b)(3) ............................................................................... 1
Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 4

**Other Authorities**

BLACKS LAW DICTIONARY 1336 (7th ed. 1999) ......................................... 17
*Customs Act*, R.S.C., 1985, c. 1 (2nd Supp.) ......................................... 2, 3
*Export and Imports Permits Act* ("EIPA"), R.S.C., 1985, c. E-19 ........... 2, 3
Hague Evidence Convention, 23 U.S.T. 2555, 847 U.N.T.S. 231 ............. 21
Inter-American Convention Against Terrorism, June 3, 2002, 42 I.L.M. 19 ................ 4, 18, 19
Kraska, James. *Safe Conduct/Safe Passage*, 8 Max Planck Encyc. of Public Int'l Law 1089-1093 (Wolfrum, ed. Oxford 2009) ......................................... 17
Public Prosecution Service of Canada Deskbook, Section 2.3 (2014) ...................... 11
RESTATEMENT (SECOND), FOREIGN RELATIONS LAW OF THE UNITED STATES § 66 (1965) ......................................... 14
RESTATEMENT (THIRD), FOREIGN RELATIONS LAW OF THE UNITED STATES, § 101 (1986) ......................................... 23
RESTATEMENT (THIRD), FOREIGN RELATIONS LAW OF THE UNITED STATES, § 907 (1986) ......................................... 19

DEFENDANTS' MOTION TO DISMISS COMPLAINT - iv
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

## I.    INTRODUCTION AND MOTION

Plaintiff is a Canadian citizen and resident who seeks to impose liability in this U.S. Court on the federal Government of Canada (including two core federal entities and three Government employees), arising out of alleged conduct involving the enforcement of Canada's technology export laws.  This Court lacks jurisdiction over plaintiff's claims and the defendants, and even if it did have such jurisdiction, the Court should decline to consider this matter.  Accordingly, defendants Attorney General of Canada for her Majesty the Queen, Canadian Border Services Agency, Global Affairs Canada, George Webb, Kevin Varga, and Patrick Liska move to dismiss plaintiff's complaint in its entirety.  Specifically, the Government parties move to dismiss under Fed. R. Civ. P. 12(b)(6), because the Complaint fails to state any cognizable claim for relief against them; under Fed. R. Civ. P. 12(b)(1) and (2), because this Court lacks jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") over them and the claims in the Complaint; and under Fed. R. Civ. P. 12(b)(1) and (3), because this Court is not a proper venue under principles of *forum non conveniens*, comity, and the Act of State doctrine.  The individual defendants move to dismiss under Fed. R. Civ. P. 12(b)(6), because the Complaint fails to state any cognizable claim for relief against them; under Fed. R. Civ. P. 12(b)(1) and (2), because this Court lacks jurisdiction under the Alien Tort Statute ("ATS") over them and the claims in the Complaint, and because the individuals are immune from suit in this Court because they acted in their official status; and under Fed. R. Civ. P. 12(b)(1) and (3), because this Court is not a proper venue under the principles of *forum non conveniens*, comity, and the Act of State doctrine.

## II.    FACTS[1]

Plaintiff is a Canadian citizen who now resides in British Columbia, Canada.[2]  During

---

[1] Although Defendants vigorously deny many of the allegations in the Complaint, they understand that the Court must accept certain of Plaintiff's allegations as true for purposes of these Rule 12(b) motions.  Defendants' discussion of the facts alleged in the Complaint in this Motion is not an admission that any of those facts are true.

[2] Complaint, ¶ 10.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 1
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

1    times relevant to this matter, she claims to have owned a home in Bellingham, Washington, and

2    to have lived and worked in the U.S. pursuant to an L-1A visa.[3]

3        Plaintiff has named three Canadian government entities as defendants – the federal

4    Government of Canada itself;[4] the Canadian Border Services Agency ("CBSA"), the Canadian

5    government entity responsible for border enforcement and customs; and Global Affairs Canada

6    ("GAC"), the Canadian government entity which manages Canada's diplomatic and consular

7    relations and encourages and regulates international trade.  Plaintiff has also sued three

8    individual Canadian citizens and residents who were employed by the Government.[5]

9        The Complaint alleges that the Canadian Government conducted an investigation and

10   criminally prosecuted the plaintiff (and her father, Steven de Jaray) for the attempted export of

11   certain circuit board assemblies and components from Canada to Hong Kong in 2008, through

12   companies that plaintiff and her father controlled.  Export of such materials is regulated by

13   Canada's *Export and Imports Permits Act* ("EIPA"), R.S.C., 1985, c. E-19, and by Canada's

14   *Customs Act*, R.S.C., 1985, c. 1 (2nd Supp.).  Plaintiff alleges that during the investigation,

15   Canadian officials mispresented certain aspects of the goods being exported,[6] and "negligently"

16   failed to verify key factual assertions they made in reports describing the goods.[7]

17   Subsequently, the Government of Canada charged plaintiff and her father with criminal

18   offenses; plaintiff was served with the indictment in May 2010 while in Canada.[8]  Plaintiff

19   alleges that Canadian authorities improperly publicized the charges, when they should have

20

21   ---

[3] Complaint ¶¶ 7, 10, 23.  An L-1A visa allows a U.S. employer to transfer an executive or manager from one of
22   its affiliated foreign offices to an office in the United States.  8 C.F.R. § 214.2(1).  The maximum amount of time
     an individual can reside and work in the United States under this visa classification is seven years.  8 C.F.R.
23   § 214.2(1)(12).
[4] The Complaint names the Attorney General of Canada in her capacity as a representative of the Government of
24   Canada.  Complaint, ¶ 11.
[5] Complaint, ¶ 49 (alleging Patrick Liska was an employee of GAC), Complaint, ¶¶ 55 and 59 (alleging Kevin
25   Varga and George Webb were employed by CBSA).
[6] E.g., Complaint, ¶ 50.
[7] *Id.*
26   [8] Complaint, ¶¶ 70 – 71.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 2
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

known that the goods could have been exported without violating EIPA or the Customs Act.[9]

Plaintiff also claims that Canadian officials enlisted the help of U.S. law enforcement agencies,

who conducted their own investigation of her until November 2013.[10]  Plaintiff says that she

was repeatedly stopped and questioned by border enforcement personnel when she entered the

United States after visiting Canada,[11] and that she "ultimately lost her L1A Visa" which

allowed her to live and work in the United States.[12]

The Complaint alleges that the "real reason" for Plaintiff's prosecution was "intense

pressure" by the United States Government on the Government of Canada to "initiate

prosecutions for export control violations and to seek jail sentences for those violations."[13]

According to plaintiff's theory, the Canadian government was susceptible to this pressure

because it wanted its citizens to obtain broader exemptions from U.S. arms control regulations

by means of "Exchange of Letters" ("EOL") between Canadian and United States officials.[14]

U.S. officials purportedly told Canadian representatives at a meeting on May 9, 2008 that such

EOL arrangements would depend on Canada's willingness to prosecute and convict offenders

of its export control laws.[15]  Plaintiff claims that the Government of Canada subsequently

"targeted and persecuted" her father to "appease" the United States, and that she "was added to

the indictment to be used as leverage against her father."[16]

In August 2011, the Government of Canada "directed that all criminal charges against

Ms. de Jaray and her father be stayed, and later dismissed."[17]  Plaintiff's father filed a civil

lawsuit in the Canadian courts in November 2011,[18] which was resolved by settlement on

---

[9] Complaint, ¶¶ 75 – 81.
[10] Complaint, ¶¶ 82 – 88; 129.
[11] Complaint, ¶¶ 92 – 95.
[12] Complaint, ¶ 99.
[13] Complaint, ¶ 101.
[14] Complaint, ¶ 107.
[15] Complaint, ¶ 108.
[16] Complaint, ¶ 102.
[17] Complaint, ¶ 124.
[18] Complaint, ¶ 125.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 3
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1  November 22, 2013.[19]  The Complaint does not identify any attempt by Ms. de Jaray to file a

2  similar action in the Canadian courts.

3      **Plaintiff's Claims.**  As against the individual defendants, all of whom are alleged to

4  have acted as Canadian government employees, the Complaint first alleges a "violation of the

5  Alien Tort Statute," 28 U.S.C. § 1350, because those parties' actions were "committed in

6  violation of the law of nations protecting individuals against violations of safe conduct."[20]  She

7  bases this claim on having to "leave her home" in the U.S., being prevented from returning to

8  the state of Washington, and losing "her L1A Visa authorizing safe conduct into the United

9  States."[21]  Second, the Complaint alleges jurisdiction under the ATS because the individual

10  defendants "instituted an improper investigation and prosecution without evidence" and "failed

11  to guarantee her fair treatment,"[22] which she claims to have violated "the law of nations and

12  treaties of the United States, including the Inter-American Convention Against Terrorism."[23]

13      As to the governmental defendants, plaintiff alleges four claims: negligence;[24] negligent

14  training and supervision;[25] negligent infliction of emotional distress;[26] and intentional infliction

15  of emotional distress and outrage.[27]  All of these claims relate to and arise out of the

16  investigatory and prosecutorial actions described above.

17  **III.    ARGUMENT AND AUTHORITIES**

18      **A.    Plaintiff's Claims Fail on the Face of the Complaint Under Rule 12(b)(6)
             and Rule 12(b)(1).**

19  Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate "where the complaint lacks a

20  cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

---

[19] Complaint, ¶ 125, 128.
[20] Complaint, ¶ 135.
[21] Complaint, ¶ 134.
[22] Complaint, ¶¶ 139 – 140.
[23] Complaint, ¶ 141.
[24] Complaint, section VII, pp. 31-32.
[25] Complaint, section VIII, pp. 33-34.
[26] Complaint, section IX, pp. 34-35.
[27] Complaint, section X, pp. 35-36.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 4
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

*Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Although the Court must

accept factual allegations in the complaint as true and construe the pleadings in the light most

favorable to the non-moving party, *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025,

1031 (9th Cir. 2008), the complaint should be dismissed if its factual allegations fail to "raise a

right to relief above the speculative level[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

556-57 (2007).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action" is insufficient.  *Id.* at 555 (citation omitted).  Where, as here, a

defendant moves for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) based

on the face of the Complaint, the Court treats the challenge as "any other motion to dismiss on

the pleadings for lack of jurisdiction."  *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th

Cir. 2012).

>    **B.     This Court Has No Jurisdiction over the Claims Against Canada and the
>             Government Defendants Under the FSIA.**

The Complaint does not specifically identify any basis for jurisdiction under the FSIA,

28 U.S.C. §§ 1602-11 (2012).  In fact, no basis for FSIA jurisdiction exists.  Plaintiff's claims

all fall within areas that the FSIA specifically exempts from consideration in U.S. courts –

namely, torts involving discretionary functions of foreign governments, and torts involving

prosecutorial activities and intentional misdoing.

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in the

courts of this country."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (*quoting Argentine

Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989) (internal quotation marks

omitted)).  Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of

United States courts."  28 U.S.C. § 1604; *Nelson*, 507 U.S. at 355.  A foreign state may be

subject to suit in the United States if one of the exceptions set out in 28 U.S.C. § 1605 is

established.  But "unless a specified exception applies, a federal court lacks subject-matter

jurisdiction over a claim against a foreign state."  *Id.*  Because "subject matter jurisdiction in

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 5
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

any [FSIA] action depends on the existence of one of the specified exceptions," "at the threshold of every action in a district court against a foreign state, therefore, the court must satisfy itself that one of the exceptions applies – and in doing so it must apply the detailed federal law standards set forth in the Act." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493–94 (1983); *In re Republic of Philippines*, 309 F.3d 1143, 1149 (9th Cir. 2002) ("the district court should have addressed the merits of the immunity question first in order to preserve the immunity that may be determined to exist"). "[I]f none of the exceptions to sovereign immunity set forth in the [FSIA] applies, the District Court lacks both statutory subject matter jurisdiction and personal jurisdiction." *Verlinden*, 461 U.S. at n.5.

There is no dispute that the Government of Canada, the Canadian Border Services Agency, and Global Affairs Canada are "foreign states" as that term is defined in the FSIA.[28] As foreign sovereigns, they are presumptively immune under the FSIA, and "the burden of production shifts to the plaintiff to offer evidence that an exception applies." *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 306-07 (9th Cir. 1997). The Complaint fails to identify any applicable exception under the FSIA, stating only this Court has subject matter jurisdiction under "28 U.S.C. § 1605, the Foreign Sovereign Immunities Act."[29] Plaintiff's failure to identify any factual predicate for jurisdiction violates Fed. R. Civ. P. 8(a). *Twombly*, 550 U.S. at 555 (Rule 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (internal quotations omitted)); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (complaint's allegations must be sufficient "to give fair notice and to enable the opposing party to defend itself effectively."). But given plaintiff's allegations, none of the exceptions in FSIA apply.

---

[28] 28 U.S.C. § 1603. Plaintiff concedes that each of the government defendants falls within the statutory definition of foreign state. Complaint, ¶¶ 11-13.

[29] Complaint, ¶ 20; *see also* ¶ 146 (claiming negligence action against Government of Canada is "authorized" pursuant to 28 U.S.C. § 1605(a)); ¶ 153 (same as to claim of negligent training/supervision); ¶ 160 (same as to claim of negligent infliction of emotional distress); and ¶ 167 (same as to intentional infliction of emotional distress and outrage claim).

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1. <u>Plaintiff Cannot Satisfy the Non-Commercial Tort Exception of the FSIA.</u>

Although there are various exceptions to sovereign immunity under the FSIA, plaintiff ultimately must attempt to rely upon 28 U.S.C. § 1605(a)(5), the non-commercial tort exception, because her claims sound in tort.[30]  That exception provides that a foreign state is not immune from jurisdiction in United States courts in cases:

> not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment . . .

28 U.S.C. § 1605(a)(5).  This exception is narrowly construed, *Risk v. Kingdom of Norway,* 707 F. Supp. 1159, 1166 (N.D. Cal. 1989), *aff'd sub. nom.*, *Risk v. Halvorsen*, 936 F.2d 393 (9th Cir. 1991), and was designed to address torts such as "traffic accidents caused by employees acting within the scope of their employment with foreign nations or their instrumentalities." *Randolph v. Budget Rent–A–Car,* 97 F.3d 319, 325 (9th Cir. 1996).

The non-commercial tort exception has two important limitations, each of which independently bars plaintiff's claims in this Court.  There is no jurisdiction over:

> (A)  any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
>
> (B)  any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights;

28 U.S.C. § 1605(a)(5)(A) and (B).  Plaintiff's claims against the governmental defendants fail because the conduct she alleges falls squarely within both exceptions.

### a.   All Allegedly Tortious Conduct Falls Within the Discretionary Function Exception.

All of Plaintiff's allegations indisputably fall within the discretionary function exemption, 28 U.S.C. § 1605(a)(5)(B).  A foreign state's action is protected by the

---

[30] Plaintiff has not pleaded facts that would satisfy any of the other statutory exceptions.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 7
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1    discretionary function exemption if (1) the action is "discretionary in nature" or "involve[s] an

2    element of judgment or choice" and (2) "the judgment is of the kind that the discretionary

3    function exception was designed to shield."  *Doe v. Holy See,* 557 F.3d 1066, 1083-84 (9th Cir.

4    2009) (*citing United States v. Gaubert,* 499 U.S. 315, 322 (1991)).  The exception was

5    designed to shield "governmental actions and decisions based on considerations of public

6    policy."  *Soldano v. United States,* 453 F.3d 1140, 1145 (9th Cir. 2006).  Because of the

7    similarities of the two exclusions, courts routinely rely on cases arising under the Federal Tort

8    Claims Act ("FTCA"), 28 U.S.C. § 2680(a), when construing its sister provision under the

9    FSIA.  *See, e.g.*, *Olsen v. Government of Mexico*, 729 F.2d 641, 646-47 (9th Cir. 1984),

10   *abrogated on other grounds by United States v. S.A. Empresa de Viacao Aerea Rio Grandense*,

11   467 U.S. 797 (1984).  However, the term "discretionary function" under FSIA is given "wider

12   scope" because courts deciding FSIA cases "must consider the additional risk of interfering

13   with foreign relations."  *Risk*, 707 F. Supp. at n.10.

14        Application of the exception involves two steps.  First, the court "must determine

15   whether the government employee had any discretion to act or if there was an element of

16   choice as to appropriate conduct."  *Risk*, 936 F.2d at 395.  Second, the court must consider

17   "whether the decisions were grounded in social, economic, and political policy," concentrating

18   on "the nature of the conduct, rather than the status of the actor. . . ."  *Id.* (citations omitted).

19   Both steps are met here.

20        **The application of discretion/choice**.  It is black letter law that the actions of

21   governmental law enforcement officials to pursue criminal investigations and/or to prosecute

22   crimes involve substantial discretion and elements of choice.  It is "well established that

23   'decision[s] [on] how to investigate, who to investigate, and how to present evidence' are

24   considered discretionary conduct."  *Arteaga-Ruiz v. United States*, 164 F. Supp. 3d 1198, 1203

25   (D. Idaho 2016); *Sabow v. U.S.*, 93 F.3d 1445, 1452 (9th Cir. 1996) (such activities are "classic

26

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 8
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

1   examples of discretionary conduct") (citation omitted); *Hilsenrath v. Swiss Confederation*,

2   2007 WL 3119833, at \*5 (N.D. Cal. Oct. 23, 2007), *aff'd*, 402 F. App'x 314 (9th Cir. 2010)

3   (Swiss government's freezing of plaintiffs' assets during criminal investigation falls within

4   discretionary function exception; Swiss officials "had discretion in deciding whether they

5   would conduct the investigation and whether or not to effect the freeze").  Decisions as to

6   "whether, when and against whom to initiate prosecution are quintessential examples of

7   governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly

8   found them to be immune under the discretionary function exception."  *Gray v. Bell*, 712 F.2d

9   490, 513 (D.C. Cir. 1983).

10          The Ninth Circuit Court of Appeals applied this rule in *General Dynamics Corp. v.*

11  *United States*, 139 F.3d 1280 (9th Cir. 1998), where a negligently prepared audit report by

12  government employees led prosecutors to improperly indict General Dynamics for federal

13  fraud.  The government "vigorously pursued" the prosecution until, finally realizing its

14  mistake, it voluntarily dismissed the indictment.  *Id.* at 1282.  General Dynamics recovered a

15  judgment exceeding $25 million in the District Court, but the Court of Appeals reversed,

16  holding that "no one doubts that prosecutorial discretion is covered" by the discretionary

17  function exception, and remanded with directions to dismiss for lack of jurisdiction.  *Id.* at

18  1283, 1287.  General Dynamics attempted to avoid the immunity rule by casting its claim at

19  different governmental actors, or as a different type of claim, but the Court of Appeals rejected

20  those efforts:

21          Courts are not required to, and should not, simply look at the surface of a
            complaint for the purpose of ascertaining the true basis of an attack upon
22          something the government has done. Thus, a party may choose to dub his claim
            as one for negligence when it is truly a claim for misrepresentation, for which
23          jurisdiction is excluded. Courts need not accept the label. Similarly, a party
            might choose to say that he is suing for infliction of emotional distress so that he
24          can avoid the bar against slander claims. Again, the courts need not accept the
            label.

25  *Id.* at 1283.

26

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 9
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

1    Here, Plaintiff's claims against the Government of Canada all arise out of an allegedly

2    improperly motivated criminal investigation and prosecution.  These are prosecutorial actions

3    that involve the discretion of the representatives of the Canadian Government.  *The Queen v.*

4    *Cook*, [1997] 1 S.C.R. 1113, ¶ 19 (Can.) ("As a general principle, we have recognized that for

5    our system of criminal justice to function well, the Crown must possess a fair deal of

6    discretion.  Moreover, this discretion extends to all aspects of the criminal justice system. . . .

7    Discretion is an essential feature of the criminal justice system.")  Plaintiff cannot evade this

8    rule by framing her claims in terms of negligence or infliction of emotional distress.

9    **Grounded in social, economic, and political policy.**  Plaintiff's claims are also based

10   on actions that involved social, economic, and political policy considerations.  Conduct is

11   immune when it is "by its nature[,] susceptible to a policy analysis" and could have been

12   influenced by "social, economic, or political policy considerations."  *Doe v. Holy See*, 557 F.3d

13   1066, 1083 (9th Cir. 2009) (affirming dismissal of claims for negligent retention, supervision

14   and training); *see also Risk*, 936 F.2d at 396 (Norway immune under the FSIA for assisting a

15   Norwegian citizen in leaving the United States with her children in violation of custody order,

16   because actions were "grounded in social, economic, and political policy," even if those actions

17   may have constituted a crime under California law).

18   Decisions to initiate a criminal investigation, to prosecute a crime, to publicize the

19   charges, to contact witnesses, and to communicate with foreign law enforcement agencies are

20   all policy-laden actions.  Canadian prosecutors are required to consider the public interest when

21   deciding whether to pursue criminal charges.

22   When deciding whether to initiate and conduct a prosecution on behalf of the
     federal Crown, Crown counsel must consider two issues:

23   • Is there is a reasonable prospect of conviction based on evidence that is
       likely to be available at trial? If there is,

24   • Would a prosecution best serve the public interest?

25

26

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 10
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

Public Prosecution Service of Canada Deskbook, Section 2.3, at 3.2 (2014).[31]  Plaintiff's Complaint admits that the actions on which she bases her claims could have been grounded in the economic and political policies of the Government of Canada, and thus are covered by the discretionary function exception.

Plaintiff's negligent training and supervision claim also "fall[s] squarely within the discretionary function exception."  *Nurse v. United States,* 226 F.3d 996, 1001 (9th Cir. 2000) (dismissing claims of "negligent and reckless employment, supervision and training of" employees); *Doe,* 557 F.3d at 1084 (stating that "the decision of whether and how to retain and supervise an employee * * * are the type of discretionary judgments that the exclusion was designed to protect.").

### b. Plaintiff's Claims Are Barred Because They Arise out of Allegations of Misrepresentation and Malicious Prosecution.

Plaintiff's claims independently fail because they all "arise out of" allegations of "malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]"  28 U.S.C. § 1605(a)(5)(B).  This conclusion is established beyond question by controlling Ninth Circuit case law directly on point.

In *Blaxland v. Com. Dir. of Public Prosecutions*, 323 F.3d 1198 (9th Cir. 2003), Australian authorities had pursued a variety of criminal charges against Blaxland, an Australian citizen then resident in California.  The charges lacked factual foundation, but various Australian government employees pursued them to "claim a political victory" and to "show results" in light of other unsuccessful prosecutions.  *Id.* at 1201.  The Australian officials swore out false affidavits resulting in Blaxland's arrest by U.S. officials and imprisonment in the United States, as well as his eventual extradition.  *Id.*  One week before the trial in Australia,

---

[31] Available at http://www.ppsc.gc.ca/eng/pub/fpsd-sfpg/fps-sfp/tpd/p2/ch03.html.  *See also* authorities cited in note 9 to Section 2.3 of the Deskbook.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 11
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1    the fraud charges were dropped; Blaxland was acquitted of the remaining minor charges. *Id.* at

2    1202.

3         Blaxland sued various Australian agencies in the United States for malicious

4    prosecution, abuse of process, intentional infliction of emotional distress, and false

5    imprisonment; his wife sued for intentional infliction of emotional distress and loss of

6    consortium. *Id.* The Ninth Circuit Court of Appeals found the Blaxlands' claims of malicious

7    prosecution and abuse of process were clearly barred by the FSIA, as were the claims of

8    emotional distress and loss of consortium. *Id.* at 1203. The latter claims were barred since they

9    "arise from the core claims and derive from the same corpus of allegations concerning his

10   extradition," regardless of plaintiff's attempt to characterize them as claims not listed in the

11   exception. *Id.*

12        *Blaxland* is controlling here. Although Ms. de Jaray frames her claims in terms of

13   negligence, improper supervision, and negligent and intentional infliction of emotional distress,

14   her real complaints are two-fold:  (a) the Government of Canada and its agents falsified key

15   information, and used that falsified information to pursue a criminal prosecution, all motivated

16   by improper ends; and (b) the Government and its agents publicized the charges and misled

17   U.S. law enforcement, again to achieve those same improper ends. This is exactly the fact

18   pattern of *Blaxland*, which held as a matter of law that all such claims are in fact claims for

19   malicious prosecution, abuse of process, libel, slander and misrepresentation, and as such, are

20   barred by § 1605(a)(5)(B). Plaintiff's characterization of her claims does not change that

21   result. *See also Cabiri v. Gov't of Ghana*, 165 F.3d 193, 199-200 (2d Cir. 1999) (where

22   plaintiff claimed intentional infliction of emotional distress for government misrepresentation

23   of her husband's whereabouts, the court rejected plaintiff's "effort to plead around the proviso

24   of subsection (a)(5)(B)," stating, "[h]owever cast, the wrongful acts alleged to have caused the

25   injury are misrepresentations made to [plaintiff]").

26

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 12
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

2.    No Other FSIA Exceptions Apply to Plaintiff's Claims.

Plaintiff has not alleged facts suggesting that any of the other exceptions to sovereign immunity under the FSIA might apply in this case.  Accordingly, the Government of Canada is immune and the Court must dismiss this action for lack of jurisdiction.

C.    **The Individual Defendants Are Immune from Jurisdiction Under the Common Law Rule of Official Acts Immunity.**

For over a century, U.S. courts have recognized that individuals acting for foreign governments are immune from suits claiming personal liability based on the performance of their official duties.  *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897) (accepting international law principle that sovereign immunity extends to an individual official acting on behalf of a foreign state).  This rule is founded on international law and practice and is critical to the conduct of international relations, as the United States expects its officials to be similarly protected in foreign courts.  In *Samantar v. Yousuf*, 560 U.S. 305 (2010), the Supreme Court ruled that the FSIA does not govern actions against foreign officials in U.S. courts, and that principles of common law recognized by the United States and the international community remain applicable:  "Even if a suit is not governed by the [FSIA], it may still be barred by foreign sovereign immunity under the common law."  *Id.* at 324.

Official acts immunity is well established in the Ninth Circuit.  In affirming dismissal of claims against a foreign official in *Chiudian v. Philippine National Bank*, the Court of Appeals noted "pre-1976 common law [i.e., pre-FSIA common law] expressly extended immunity to individual officials acting in their official capacity."  912 F.2d 1095, 1101 (9th Cir. 1990), *abrogated on other grounds by Samantar*, 560 U.S. 305.[32]  More recently, in *Mireskandari v. Mayne*, 2016 WL 1165896 (C.D. Cal. Mar. 23, 2016), plaintiffs sued various United Kingdom

---

[32] *Samantar* abrogated *Chiudian's* ruling that the FSIA covered claims against individual defendants, but it also confirmed that pre-FSIA common law principals govern the immunity of foreign officials.  See discussion above.

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

officials, alleging those officials acted improperly on behalf of a foreign state.  In dismissing

the charges against the individual defendants on grounds of official immunity, the Court noted:

> Although Plaintiffs allege that Middleton acted improperly while carrying out his duties in his capacity as an official. . ., there is no allegation that Middleton purported to act in any capacity other than in his official capacity. . . . This is true even though Plaintiffs allege Middleton undertook these duties in violation of U.S. law. . . .  Common law immunity functions to protect foreign officials from standing accused of violating American laws when those acts are performed within the scope of his official duty. . . . Common law immunity would be an entirely superfluous legal doctrine if it only protected officials who were not accused of any wrongdoing. . . .

*Id.* at *17.  In dismissing claims against two investigators, the Court stated:

> Notwithstanding the corrupt and dishonest nature of some of these allegations, the conduct described. . . comports with that of police officers performing their official duties in investigating crimes.  All of the allegations against Mayne and Lees relate to their jobs as police officers investigating cases at the request of their supervisors . . . [T]here is no allegation that. . . [defendants] were acting in their capacities as private citizens.

*Id.* at *19.  This analysis applies directly to the individual defendants here.  The Complaint

alleges that they acted entirely in their official capacity as government employees.  Plaintiff

does not allege that any of the individual defendants acted in a private capacity, or beyond the

scope of his authority.  Indeed, the complaint alleges that the Government pressured the

individual defendants to "produce an export controls conviction."[33]

      The rule of conduct-based immunity applies to official acts performed within the scope

of official duties, and it continues to apply to individual officials after they leave office, even in

cases where the foreign state is not immune.  *Matar v. Dichter*, 563 F.3d 9, 13 (2d Cir. 2009)

("whether the FSIA applies to former officials or not, they continue to enjoy immunity under

common law"); *Belhas v. Ya'alon*, 515 F.3d 1279, 1284-85 (D.C. Cir. 2008); *Rosenberg v.

Lashkar-e-Taiba*, 980 F. Supp. 2d 336, 342-44 (E.D.N.Y. 2013); RESTATEMENT (SECOND) OF

FOREIGN RELATIONS LAW OF THE UNITED STATES § 66 (1965).

---

[33] Complaint, ¶ 102.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 14
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

In some cases, the United States Government files a Suggestion of Immunity with the District Court, setting out its position on the official immunity issue.  The Government of Canada has formally requested that the United States submit a Suggestion of Immunity to this Court for the three individual defendants, and such a Suggestion (if made) might be determinative.  However, while that request is under consideration, the Court is free to decide the immunity issue on its own.  *Samantar*, 560 U.S. at 311-12.  Courts routinely dismiss actions against foreign officials without Executive suggestion.[34]

Mr. Webb, Mr. Varga, and Mr. Liska each enjoy foreign official immunity under common law.  Plaintiff's claims against them should be dismissed.

**D.    The Court Lacks Subject Matter Jurisdiction over the Claims Against Individual Defendants Under the Alien Tort Statute.**

The Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, authorizes "original jurisdiction of any civil action by an alien for tort only, committed in violation of the law of nations or a treaty of the United States."  In *Sosa v. Alvarez – Machain*, 542 U.S. 692, 724 (2004) ("*Sosa*"), the Supreme Court held that this 1789 statute is only jurisdictional and is limited in scope, allowing U.S. courts to entertain "a modest number of international law violations" arising under common law "defined with a specificity comparable to the features" of certain 18th century paradigms.  Under *Sosa*, "actionable violations of international law must be of a norm that is specific, universal and obligatory."  *Sosa*, 542 U.S. at 732 (*quoting In re Estate of Marcos*

---

[34] *See, e.g.*, *Richardson v. Att'y Gen. of the British Virgin Is.*, 2013 WL 4494975, at *16 (D.V.I. Aug. 20, 2013) (foreign customs official found immune because his actions "were undertaken within the scope of his duty and thus fit neatly within the general contours of official-act immunity"; no suggestion of immunity filed); *Weiming Chen v. Ying-jeou Ma*, 2013 WL 4437607, at *2–3 (S.D.N.Y. Aug. 19, 2013) (foreign officials found "immune from this Court's jurisdiction" because "[u]nder the common law, an individual foreign official is entitled to immunity for acts performed in his official capacity"; no suggestion of immunity filed) (internal quotation marks omitted); *Fotso v. Republic of Cameroon*, 2013 WL 3006338, at *6–7 (D. Or. June 11, 2013) (foreign officials found immune "based on the common law of foreign official immunity," although "the State Department ha[d] thus far declined to determine [their] immunity"); *Smith v. Ghana Commercial Bank, Ltd.*, 2012 WL 2930462, at *7, 10 (D. Minn. June 18, 2012) ("the Attorney General [of Ghana] is immune from suit under the common law of foreign sovereign immunity, and this action should be dismissed against him for lack of subject matter jurisdiction"; no suggestion of immunity filed), *report and recommendation adopted*, 2012 WL 2923543 (D. Minn. July 18, 2012).

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 15
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington   98101-2939*
*206 464 3939*

*Human Rights Litig.*, 25 F.3d 1467, 1475 (9th Cir. 1994)).  Thus, to support subject matter

jurisdiction under the ATS, a complaint must allege facts plausibly showing a violation of an

established rule of international law with a definite content accepted by the international

community as a whole.  *Mujica v. Air Scan*, 771 F.3d 580, 592 (9th Cir. 2014).  Applying this

narrow standard, the Ninth Circuit Court of Appeals has ruled that the ATS provides

jurisdiction for claims of genocide and war crimes, but that international law standards relating

to (for example) crimes against humanity and racial discrimination are not yet sufficiently

defined to support an actionable ATS claim.  *Sarei v. Rio Tinto*, 671 F.3d 736, 744 (9th Cir.

2011), *vacated,* 133 S. Ct. 1995 (2013), *aff'd on remand,* 722 F.3d 1109 (9th Cir. 2013).

The complaint in this case asserts two theories of ATS jurisdiction against the

individual defendants.  The first, claiming a violation of the law of nations protecting

individuals against violations of a right to "safe conduct,"[35] has no relevance to this case.  The

second[36] is based on a treaty that (1) by its terms does not apply in this case, and (2) is not

enforceable as domestic law in a U.S. court.  There is no ATS jurisdiction.

> 1.   <u>Plaintiff Had No Right of Safe Conduct Under International Law, and
> None Was Violated by Defendants.</u>

Plaintiff contends that the individual defendants' "actions with respect to the FBI"

violated "a right of safe conduct" grounded in the law of nations, because she was forced to

leave the U.S., was prevented from returning, and "ultimately" lost her U.S. visa.  This theory

is not consistent with any modern understanding of the international law right of "safe conduct"

which is "specific, universal and obligatory."

"Safe conduct" is a narrow concept applicable in the law of armed conflict, including

safe passage for humanitarian relief.  The term "describes a written permission and protection

given by a belligerent in an international armed conflict for a person to travel unhindered by the

---

[35] Complaint, ¶ 135.
[36] Complaint, ¶ 141.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 16
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

local population or local authorities to a given place for a certain purpose."[37]  *See also* BLACKS

LAW DICTIONARY 1336 (7th ed. 1999).  While the practice noted in *Sosa* may have included

broader aspects in the 18th century, those features have been superseded by treaty-based

immunities for diplomatic personnel and by provisions of modern commercial treaties.  There

is no "specific, universal and obligatory" international law authority for implying a right of

"safe conduct" from the possession of a U.S. visa.  *Cf. Taveras v. Taveraz*, 477 F.3d 767, 773

(7th Cir. 2007) (rejecting ATS jurisdiction based on allegedly fraudulent issuance of a U.S.

visa).

Nor does plaintiff explain how the right of safe conduct would provide a right of action

against the Canadian defendants.  Historically, the obligation to provide safe conduct was a

duty placed on the host country – here, the United States.  A criminal investigation by the U.S.

into exports of goods manufactured here is not a violation of international law, nor is the

enforcement of U.S. immigration laws.  Similarly, any alleged request by Canadian officials for

assistance in Canada's investigation and prosecution under its export control laws does not

violate international law.

Further, the Complaint never identifies how, when or why plaintiff lost her U.S. visa; it

merely asserts that she "ultimately" lost it.[38]  This vague assertion is insufficient to establish a

plausible **factual** basis for the necessary nexus between the tort alleged and violation of a well-

defined rule of international law.  As noted in *Tavaras*, "a collateral or incidental connection

between the alleged tort and law of nations violation is insufficient; the tort itself must be a

direct violation of the law of nations to arise under the ATS."  *Tavaras*, 477 F.3d at 775.  Here,

the "wrongful conduct" involves supposed misrepresentations by the individual defendants, but

---

[37] Kraska, James.  *Safe Conduct/Safe Passage*, 8 Max Planck Encyc. of Public Int'l Law 1089-1093 (Wolfrum, ed. Oxford 2009).
[38] Complaint, ¶ 99.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 17
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206  464  3939*

1   there is no alleged "direct violation" of the law of nations or the right to safe conduct.  At the

2   most, any effect on plaintiff's visa status was collateral or incidental to the wrongful conduct.

3        2.     <u>The Inter-American Convention Against Terrorism Does Not Apply in</u>
                <u>This Case and Is Not a Basis for a Private Right of Action Under U.S.</u>

4                   <u>Treaty Law.</u>

5       Plaintiff also asserts ATS jurisdiction on the theory that defendants' actions violate

6   Canada's obligations under the Inter-American Convention Against Terrorism, June 3, 2002,

7   42 I.L.M. 19 (the "Convention").[39]  This assertion cannot withstand the slightest scrutiny.

8       First, the Convention by its terms does not apply in this case.  The Convention applies

9   only to offenses "established" in ten agreements specified in Article 2.  The Complaint does not

10   allege that plaintiff was charged with any offense covered by those instruments.[40]  Instead, as

11   described by the Complaint, plaintiff was charged with export and reporting violations of

12   specified export control laws.[41]

13       Second, the Convention does not embody rules which can be the basis for decision in a

14   U.S. court under the ATS or otherwise, because the Convention is not self-executing.  Under

15   the Constitution, U.S. treaties which contemplate future implementation do not become

16   domestic law enforceable under Article VI until implemented by Congressional legislation.

17   *Foster v. Neilson,* 27 U.S. 253 (1829) (Marshall, C.J.); *overruled on other grounds*, *United*

18   *States v. Percheman,* 32 U.S. 51 (1833).  Pending such legislation, such treaties remain valid

19   "contracts" between States, but they cannot be enforced directly by U.S. courts.  *Id.*  The

20   parties' intent to give a treaty self-executing effect must be clearly expressed:

21       [W]hile treaties "may comprise international commitments . . . they are not
    domestic law unless Congress has either enacted implementing statutes or the

22       treaty itself conveys an intention that it be 'self-executing' and is ratified on
    these terms."

23

24   [39] Complaint, ¶¶ 140 – 141.  The Complaint does not identify any other applicable treaty or plead facts showing some other treaty violation, as required by Fed. R. Civ. P. 8.

25   [40] Plaintiff's Complaint repeatedly states that defendants "labeled" her as a terrorist.  The Complaint never identifies any instance in which any of the defendants used that word to describe her (or her father).

26   [41] Complaint, ¶ 75.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 18
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1  *Medellin v. Texas*, 552 U.S. 491, 505 (2008).  This principle applies to limit claims under the

2  ATS.  *Sosa*, 542 U.S. at 734-735 (holding that the International Covenant on Political and Civil

3  Rights does not support an ATS claim because the treaty is not self-executing).

4        On its face, the Convention is not self-executing, as it includes specific language

5  contemplating future legislative action to execute the treaty in each State:

6       The purposes of this Convention are to prevent, punish and eliminate terrorism.
        To that end, the states parties agree to adopt the necessary measures and to
7       strengthen cooperation among them, in accordance with the terms of this
        Convention.

8  Convention, 42 I.L.M. 19 at Art. 1.  And even if the Convention was self-executing, it would

9  not provide a cause of action to plaintiff, because the "presumption" is that "international

10 agreements, even those directly benefiting private persons, generally do not create private

11 rights or provide for a private cause of action in domestic courts."  *Medellin*, 552 U.S. at 553

12 n.3 (*quoting* 2 RESTATEMENT (THIRD), FOREIGN RELATIONS LAW OF THE UNITED STATES,

13 § 907, comment *a.*, at p. 395 (1986)).  Plaintiff has no claim of any sort under the Convention,

14 and she cannot establish jurisdiction over the individual defendants under the ATS.

15      **E.      The Court Should Dismiss This Action for Improper Venue.**

16      Plaintiff's claims also should be dismissed under the doctrine of forum non conveniens

17 ("FNC").  An action should be dismissed for FNC when the defendant establishes "such

18 oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience,

19 which may be shown to be slight or nonexistent."  *Boston Telecomm. Grp., Inc. v. Wood*, 588

20 F.3d 1201, 1206 (9th Cir. 2009) (citation omitted).  Dismissal requires "an adequate alternative

21 forum" and that "the balance of private and public interest factors favors dismissal."  *Carijano*

22 *v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011); *Kellerman v. Inter Island*

23 *Launch*, 2015 WL 6620604, at *4-5 (W.D. Wash. Oct. 30, 2015).

24

25

26

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1.   <u>Canada Is an Adequate Alternative Forum in This Case.</u>

An alternative forum is one where the defendants are amenable to service of process and the plaintiff has some remedy for her wrong. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001). Generally, a "foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong." *Id.* at 1144. The requirement is met except in "rare circumstances . . . where the remedy provided by the alternative forum . . . is so clearly inadequate or unsatisfactory, that it is no remedy at all." *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991).

Here, Canada represents a clearly suitable alternate forum for Plaintiff's claims. All of the parties are Canadian, and the actions that give rise to Plaintiff's claims are alleged to have occurred there. Plaintiff's father brought an action based on the same operative facts Plaintiff describes, which was resolved by settlement.

2.   <u>The Private and Public Interest Factors Weigh Heavily in Favor of Dismissal.</u>

The following "private interest factors" are considered when deciding a motion to dismiss based on FNC:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lueck*, 236 F.3d at 1145 (internal quotation marks and citations omitted). The Court also considers various "public interest" factors:

> (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; [and] (5) the avoidance of unnecessary problems in conflicts of law.

*Id.* at 1146.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 20
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1    All the private interest factors weigh strongly in favor of dismissal in this case.  All of

2    the parties (including plaintiff) reside in Canada, making it the most convenient forum.

3    Plaintiff's claims relate to official actions of Canadian government employees, so most of the

4    witnesses and evidence will be located in Canada as well.  Proceeding in Canada would remove

5    any obstacle of compelling attendance of unwilling witnesses across international lines, which

6    would be complicated in this Court by the fact that Canada is not a signatory to the Hague

7    Evidence Convention.[42]  While one private factor (the enforceability of a judgment) is neutral,

8    the trial factor weighs heavily in favor of dismissal.  Many of the witnesses in this case are

9    likely to be Canadian government officials.  Requiring them to leave their posts and travel to

10   Seattle to attend trial would be a significant burden.  The court should avoid this unnecessary

11   imposition on the operations of the Canadian government.  *See Vendendi SA v. T-Mobile USA*

12   *Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (dismissal based on FNC was proper when the only

13   allegations connecting the action to the United States were "incidental to the substance of [the]

14   complaint and involve[d] only tenuous connections to the United States."); *Lueck*, 236 F.3d at

15   1146-47 (dismissal under FNC was proper where it would have been more difficult to summon

16   the documents and witnesses in New Zealand to the United States than vice versa).

17   Setting aside factors that are inapplicable,[43] the public interest factors also weigh

18   strongly in favor of dismissal in this case.  The United States and its citizens have little or no

19   interest in this case.  All the parties and most of the witnesses are outside of this country, and

20   little if any of the alleged wrongful conduct occurred here.  Conversely, the citizens of Canada

21   have a direct, substantial interest in the Canadian government's enforcement of that nation's

22   laws.  While Plaintiff claims she suffered harm related to her residence in Washington, she also

23   acknowledges she is a Canadian citizen.  The Court should therefore dismiss this action in

24

25   [42] 23 U.S.T. 2555, 847 U.N.T.S. 231.

26   [43] Defendants are not aware of any reason court congestion would be a factor in the Court's decision.  Similarly, this is not a diversity case.

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 21
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

favor of a more convenient forum, the courts of Canada.  *See Lueck*, 236 F.3d at 1146-47

(dismissal of Arizona action based on FNC was proper where none of the plaintiffs and only

one defendant was a resident of the United States, Arizona's interests in the litigation was slight

compared to the time and resources the court would expend if it retained jurisdiction, and New

Zealand's interest regarding the suit was high).

     **F.**     **This Action Is Barred by the Act of State Doctrine.**

Under the federal common law of foreign relations, U.S. courts will not examine the

validity of official acts by a recognized foreign government performed within its own territory

absent a treaty providing controlling legal principles.  *See W.S. Kirkpatrick Co. v.*

*Environmental Tectonics Corp.*, 493 U.S. 400, 405-406 (1990); *Banco Nacional de Cuba v.*

*Sabbatino*, 376 U.S. 398, 401, 416 (1964); *Oetjen v. Central Leather Co.*, 246 U.S. 297, 303

(1918); *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897); *Int'l Ass'n of Machinists and*

*Aerospace Workers v. OPEC*, 649 F.2d 1354, 1358 (9th Cir. 1989).  Where the act of state

doctrine applies, it is "a rule of decision for the courts of this country."  *Kirkpatrick*, 493 U.S.

at 405.

Act of state issues arise "when the outcome of the case turns upon [] the effect of

official action by a foreign sovereign."  *Id.*  The Ninth Circuit applied the act of state doctrine

to bar plaintiff's anti-trust claims alleging price-fixing by the OPEC cartel in *Int'l Ass'n of*

*Machinists and Aerospace Workers*, 649 F.2d at 1361.  *See also Spectrum Stores v. Citgo*

*Petroleum Corp.*, 632 F.3d 938, 954 (5th Cir. 2011); *Doe 1 v. Israel*, 400 F. Supp. 2d 86, 113

(D.D.C. 2005).  In *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1165

(D.C. Cir. 2002), the Court refused to pass upon a foreign state's denial of an export license,

noting that "the right to regulate imports and exports is a sovereign prerogative" subject to the

act of state doctrine.  "The policies underlying the doctrine include 'international comity,

respect for the sovereignty of foreign nations on their own territory, and the avoidance of

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 22
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

1   embarrassment to the Executive Branch in its conduct of foreign relations.'" *Id.* (citing *Banco*

2   *Nacional de Cuba*, 376 U.S. at 408). *See also In re Vitamin C Antitrust Litigation*, 2016

3   WL 5017312 (2d Cir. Sept. 20, 2016) (dismissing antitrust claims against vitamin distributors

4   based on comity and act of state doctrine; "the act of state doctrine is a principle of law

5   designed primarily to avoid judicial inquiry into the acts and conduct of the officials of the

6   foreign state, its affairs and its policies and the underlying reasons and motivations for the

7   actions of the foreign government") (citations omitted).

8       All these policies are implicated in this case. Plaintiff's claims would require this Court

9   to examine the official acts taken by the Government of Canada to enforce Canadian export

10   control laws, the policies of that Government, and the reasons and motivations for the acts.

11   Such claims are barred by the act of state doctrine.

12   **G.    Plaintiff's Suit Should Be Dismissed on Grounds of International Comity.**

13       International comity is defined as judicial deference to the legislative, executive or

14   judicial acts of another nation, and is a well-established principle of U.S. law. *Hilton v. Guyot*,

15   159 U.S. 113 (1895); RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED

16   STATES, § 101, comment *e* (1987). U.S. courts have frequently dismissed claims against or

17   involving foreign nations on comity grounds. *See, e.g., F. Hoffman-La Roche Ltd. v.*

18   *Empagran S.A.*, 542 U.S. 155, 169 (2004); *Underhill v. Hernandez,* 168 U.S. 250, 252 (1897);

19   *Ungaro-Benares v. Dresdner Bank AG*, 379 F.3d 1227, 1232 (11th Cir. 2004); *In re Vitamin C*

20   *Antitrust Litigation*, 2016 WL 5017312 at *1.

21       International comity is a doctrine of prudential abstention, one that "counsels
     voluntary forbearance when a sovereign which has a legitimate claim to
22       jurisdiction concludes that a second sovereign also has a legitimate claim to
     jurisdiction under principles of international law."

23   *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014).

24       The Ninth Circuit adopted an interest analysis in *Timberlane Lumber Co. v. Bank of*

25   *America*, 549 F.2d 597, 614 (9th Cir. 1976), weighing the nationality of the parties, the

26

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 23
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1    territorial location and the nature of the conduct at issue, and the respective interests of the

2    forum and the foreign state involved.  In applying this test, the court in *Mujica* stated, "[T]he

3    weaker the nexus between the challenged conduct and U.S. territory or U.S. parties, the weaker

4    the justification for adjudicating the matter in U.S. courts and applying U.S. federal or state

5    law" and "[t]he closer the connection between the conduct and core prerogatives of the

6    sovereign, the stronger that sovereign's interest." *Mujica*, 771 F.3d at 605-06.

7        In this case, the interests of Canada far outweigh the interests of the United States.

8    Plaintiff and all defendants are Canadian.  The alleged wrongful conduct took place in Canada.

9    The subject matter of the litigation relates to Canada's control over technology exports; its

10   national security policies; and its negotiations of arms control regulations with other countries.

11   Canada's protection of its borders, its national defense, and the enforcement of its criminal laws

12   are all "core prerogatives" of that sovereign nation.  There is no countervailing nexus to the

13   United States or any party here.

14   **IV.   CONCLUSION**

15       This Court lacks jurisdiction over this matter, and it should be dismissed in its entirety.

16   Alternatively, this Court should exercise its power to decline jurisdiction over this action.

17

18

19

20

21

22

23

24

25

26

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

1

DATED this 29th day of September, 2016.

2

GARVEY SCHUBERT BARER

3

4

By  /s/David R. West

David R. West, WSBA #13680

5

Donald B. Scaramastra, WSBA #21416

Victoria Slade, WSBA #44597

6

Garvey Schubert Barer

1191 Second Avenue, Suite 1800

7

Seattle, WA 98101

(206) 464-3939

8

Of Counsel:  Mark B. Feldman (not

admitted in Washington)

9

10

Attorneys for Defendants Attorney

General of Canada for Her Majesty

11

The Queen, Canadian Border Services

Agency, Global Affairs Canada,

12

George Webb, Kevin Varga, and

Patrick Liska

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 25
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2016, I electronically filed the DEFENDANTS'

MOTION TO DISMISS COMPLAINT and proposed order on behalf of Defendants Attorney

General of Canada for Her Majesty The Queen, Canadian Border Services Agency, Global

Affairs Canada fka Department of Foreign Affairs and International Trade Canada, George

Webb, Kevin Varga, and Patrick Liska with the Clerk of the Court using the CM/ECF system,

which will send notification of such filing to:

> Andrew C. Lauersdorf
> Janis C. Puracal
> MALONEY LAUERSDORF REINER, PC
> 1111 E. Burnside Street, Suite 300
> Portland, Oregon 97214
> Telephone: 503-245-1518
> Facsimile: 503-245-1417
> acl@mlrlegalteam.com
> jcp@mlrlegalteam.com
> *Attorneys for Plaintiff Perienne de Jaray*

DATED this 29th day of September, 2016.

GARVEY SCHUBERT BARER

By  */s/David R. West*
_____
David R. West, WSBA #13680
Garvey Schubert Barer
1191 Second Avenue, Suite 1800
Seattle, WA 98101
(206) 464-3939
drwest@gsblaw.com

GSB:7949337.9

DEFENDANTS' MOTION TO DISMISS COMPLAINT - 26
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939