Andrew C. Lauersdorf, WSBA #35418
E-mail: acl@mlrlegalteam.com
Janis C. Puracal, WSBA #39234
E-mail:  jcp@mlrlegalteam.com
MALONEY LAUERSDORF REINER, PC
1111 E. Burnside St., Ste. 300
Portland, OR  97214
Telephone: (503) 245-1518
Facsimile: (503) 245-1417

Attorneys for Plaintiff Perienne de Jaray

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| PERIENNE DE JARAY,<br><br>           Plaintiff,<br><br>     v.<br><br>ATTORNEY GENERAL OF CANADA FOR HER MAJESTY THE QUEEN, CANADIAN BORDER SERVICES AGENCY, GLOBAL AFFAIRS CANADA fka DEPARTMENT OF FOREIGN AFFAIRS AND INTERNATIONAL TRADE CANADA, GEORGE WEBB, KEVIN VARGA, and PATRICK LISKA,<br><br>          Defendants. | No.:  2:16-cv-00571<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS<br><br>NOTE ON MOTION CALENDAR: Friday, October 21, 2016<br><br>**REQUEST FOR ORAL ARGUMENT** |



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

# TABLE OF CONTENTS

I. STATEMENT OF FACTS..................................................................................................... 1

II. ANALYSIS ...................................................................................................................... 3

    A.  The Court has jurisdiction over the Government of Canada under the FSIA. ........ 3

        1.  Plaintiff adequately pled grounds for jurisdiction. .................................... 3

        2.  Defendants bear the burden to prove immunity.......................................... 3

        3.  The FSIA's "Non-Commercial Tort" Exception applies to preclude
            immunity. ................................................................................................... 4

        4.  The Government of Canada waived its immunity. .................................... 11

        5.  The FSIA's "commercial acts" exception precludes immunity................. 14

    B.  The Court has jurisdiction over the Individual Defendants under the ATS.......... 16

    C.  The *forum non conveniens* doctrine does not apply. ........................................... 19

        1.  Canada is not an adequate alternate forum. .............................................. 20

        2.  The balance of private and public interest factors favors venue................ 20

    D.  The "act of state" doctrine does not apply. ......................................................... 23

    E.  The "international comity" doctrine does not apply. ............................................ 23

III. CONCLUSION................................................................................................................ 25

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 2:16-cv-00571

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

# I.  STATEMENT OF FACTS

Defendants' motion to dismiss is based largely on their attempt to ignore the facts pled in the complaint.  Plaintiff's allegations arise out of wrongful and unlawful conduct occurring within the United States.

Plaintiff alleged facts to prove that the Defendants acted either pursuant to a mandate from the Government of Canada[1] and a directive to "shut down" Plaintiff's company, or, in the alternative, outside the scope of authority under the mandate.  Complaint ¶¶ 2-3, 59, 101-117.

The action, however, took place in the United States.  Plaintiff and her company were located in Ferndale, Washington.  *Id.* ¶ 22-23.  Under international law, Defendants could not simply enter the U.S. to take action under the guise of law enforcement.[2]  Defendants were required to request assistance from U.S. authorities pursuant to international treaties, but skirted those requirements by providing the FBI and U.S. Attorney's Office in Seattle, Washington, with falsified reports of Plaintiff's alleged involvement in criminal activity.  Complaint ¶¶ 82-99.

Plaintiff alleged that Defendants submitted falsified reports and misrepresented material facts to U.S. authorities in order to gain access to witnesses and information on U.S. soil, and to harass and intimidate Plaintiff.  Complaint ¶¶ 6, 82-90.  Defendants entered the Apex facility in Ferndale, Washington, and repeatedly intimidated employees at that facility under color of law.  *Id.* ¶ 59.  Defendants insinuated that Plaintiff and the company were involved in illegal arms dealing and terrorism.  *Id.*  Plaintiff also alleged that Defendants contacted and met with suppliers and customers in Washington and Oregon.  *Id.*  Defendants ultimately succeeded in their goal of shutting down Plaintiff's business, and forcing her from the U.S., when employees, suppliers, and customers terminated relationships with Apex out of fear that they would be associated with terrorist activity.  *Id.* ¶¶ 59-62.  Plaintiff was forced to surrender her L1A Visa and essentially deported from the U.S., without explanation, hearing, or other due process, and

---

[1] The Attorney General of Canada, the Canadian Border Services Agency ("CBSA"), and Global Affairs Canada (also known as "DFAIT") will be referred to collectively as the "Government of Canada."
[2] *See*, *e.g.*, Ian Brownlie, *Principles of Public Int'l Law*, 6th ed., Oxford University Press, Oxford, 2003, p.306.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1   unable to return to her home in Washington that she had owned since 2006.  *Id.* ¶¶ 97-99.[3]

2        Plaintiff alleged jurisdiction over the Government of Canada pursuant to the Foreign

3   Sovereign Immunities Act ("FSIA").  Plaintiff alleged facts to prove that the Government of

4   Canada is liable for:  (1) negligence or recklessness in manipulating and directing the

5   engagement of U.S. authorities and actions on U.S. soil, Complaint ¶¶ 145-151; (2) negligent or

6   reckless training of agents in their engagement of U.S. authorities and their actions on U.S. soil,

7   *id.* ¶¶ 152-158; (3) negligent or reckless supervision of agents in their engagement of U.S.

8   authorities and their actions on U.S. soil, *id.* ¶¶ 152-158; (4) negligently or recklessly inflicting

9   emotional distress upon Plaintiff by giving false information to U.S. authorities and intimidating

10  and harassing her on U.S. soil, *id.* ¶¶ 159-173; and (5) civil conspiracy between agents and

11  officers of the Government of Canada to commit unlawful acts with reckless, willful and wanton

12  disregard for the rights, person, and property of Plaintiff, *id.* ¶¶ 59-99, 137.  Plaintiff also alleged

13  facts to prove that the Government of Canada is vicariously liable for the negligence or infliction

14  of emotional distress committed by its agents who engaged and manipulated U.S. authorities and

15  took action in the U.S. to harass and intimate Plaintiff.  *Id.* ¶¶ 145-151, 159-173.

16       Plaintiff alleged jurisdiction over the Individual Defendants—George Webb, Kevin

17  Varga, and Patrick Liska—under the Alien Tort Statute ("ATS").  Plaintiff alleged facts to prove

18  that, to the extent the Individual Defendants acted outside the scope of their authority, they

19  violated international law by directing or carrying out the unlawful conduct in the United States.

20  *Id.* ¶¶ 131-144.

21       Pre-suit, Plaintiff demanded that the Government of Canada answer for its conduct.  de

22  Jaray Decl ¶ 10.  The Government refused to do so, arguing that it was outside the statute of

23  limitations in Canada.  *Id.*  Now, Defendants argue that they are outside the jurisdiction of the

24  United States.

25

26  ---

[3] *See also* Declaration of Perienne de Jaray ("de Jaray Decl.") ¶ 7.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

## II.  ANALYSIS

**A.     The Court has jurisdiction over the Government of Canada under the FSIA.**

**1.      Plaintiff adequately pled grounds for jurisdiction.**

Defendants suggest that the Court must require a greater-than-usual level of detail in the pleadings in a case involving a foreign sovereign.[4]  The Ninth Circuit specifically rejected that argument in *Doe v. Holy See*:  "[W]e have never held that anything other than our usual notice pleading standard applies to complaints that allege an exception to foreign sovereign immunity."[5]  Instead, "[i]n evaluating assertions of subject-matter jurisdiction based on an exception to foreign sovereign immunity . . . we apply the same notice pleading requirements we would apply to any other assertion of subject-matter jurisdiction and look only for a 'short and plain statement' of the basis for jurisdiction."[6]

The liberal notice-pleading standard does not require a party to list the specific subsections of each statute upon which she relies.[7]  "A court may dismiss a complaint only if it is clear that no relief could be granted *under any set of facts that could be proved consistent with the allegations*."[8]  The complaint properly alleges jurisdiction "under 28 U.S.C. § 1605, the Foreign Sovereign Immunities Act."[9]  Plaintiff pled jurisdiction under the FSIA in its entirety because there are several exceptions to immunity that apply.  Plaintiff also pled the factual predicate for each exception, as discussed below.

**2.      Defendants bear the burden to prove immunity.**

Under the FSIA, once "the asserted allegations bring claims within the statutory exceptions to FSIA, the burden then shifts to the party asserting immunity to prove that the

---

[4] Motion to Dismiss at p. 6 [Dkt. No. 22].
[5] 557 F.3d 1066, 1073-74 (9th Cir. 2009).
[6] *Id.*
[7] *See Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004).  *See also Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (A complaint need not even "identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss.") (citations omitted).
[8] *Sagana*, 384 F.3d at 724 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002)) (emphasis added).
[9] Complaint ¶ 20.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

exceptions do not apply."[10]  At all times, "[t]he ultimate burden of persuasion remains with the foreign sovereign[.]"[11]

Defendants have declined to offer any evidence to prove that the exceptions do not apply.[12]  "Where a defendant claims only 'that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction,' we treat the challenge as 'any other motion to dismiss on the pleadings for lack of jurisdiction.'"[13]  The Court must "determine whether the complaint alleges 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"[14]

If, on reply, Defendants attempt to offer evidence outside the complaint, Plaintiff requests the Court permit Plaintiff to engage in discovery and offer evidence in rebuttal.[15]

### 3. The FSIA's "Non-Commercial Tort" Exception applies to preclude immunity.

Defendants focus their motion to dismiss on the "non-commercial tort" exception to immunity under the FSIA.  This exception precludes immunity in any case "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment."[16]

Defendants argue that the exception does not apply because the conduct was

---

[10] *O'Bryan v. Holy See*, 471 F. Supp.2d 784, 790 (W.D. Ky. 2007) (citing *Siderman v. Republic of Argentina*, 965 F.2d 699, 707-08 (9th Cir.1992)).
[11] *Id.* (citing *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993); *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 n.6 (5th Cir.1989)).
[12] *See* Motion to Dismiss p. 1, n.1 [Dkt. No. 22].
[13] *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004); *Doe*, 557 F.3d at 1073).
[14] *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)).
[15] *See Doe v. Bin Laden*, 580 F.Supp.2d 93, 99 (D.C. 2008) ("While § 1605(a)(5) does not preclude Doe from bringing his civil conspiracy claim against Afghanistan, a factual dispute exists that affects the determination of subject matter jurisdiction.  Thus, Afghanistan's motion to dismiss will be denied without prejudice to its refiling after the parties have an opportunity to conduct limited discovery.").
[16] 28 U.S.C. 1605(a)(5).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

discretionary or arose out of misrepresentations or malicious prosecution.  Those exemptions do not apply under the facts of this case as pled in the complaint.

### a.   The discretionary conduct exemption does not apply.

Discretionary conduct requires, at a minimum, an element of judgment or choice.[17]  "The proper question to ask is not whether the Government as a whole had discretion at any point, but whether its allegedly negligent agents did in each instance."[18]  As discussed below, Plaintiff alleged that the conduct complained of here was taken in violation of law and pursuant to a mandate and directive from the Government of Canada.  The acts were not discretionary.

### (1)   Acts in violation of law are not protected as discretionary.

Acts taken in violation of law are outside the discretionary function.[19]  "[C]onduct cannot be discretionary if it violates the Constitution, a statute, or an applicable regulation.  Federal officials do not possess discretion to violate constitutional rights or federal statutes.  In addition, an agency's violation of its own mandatory regulations is not a discretionary act."[20]

Plaintiff, here, alleged that agents filed falsified reports and gave false information to U.S. authorities to gain access to Plaintiff and witnesses on U.S. soil for purposes of intimidation and harassment.[21]  Plaintiff alleged facts to prove that agents falsely reported that Plaintiff was involved in terrorism and illegal arms-dealing.[22]  Plaintiff also alleged that agents knew that the information was false when given because the government's own technical officer had already determined that the seized goods were not made for military weapons and did not require an

---

[17] *See O'Bryan*, 471 F.Supp.2d at 793 (citations omitted).
[18] *In re Glacier Bay*, 71 F.3d 1447, 1451 (9th Cir. 1995).
[19] *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate.") (citing *United States Fidelity & Guaranty Co. v. United States*, 837 F.2d 116, 120 (3d Cir.)); *Limone v. U.S.*, 497 F.Supp.2d 143, 203 (D. Mass. 2007) ("[T]he discretionary function exception immunizes only the conduct of agents exercising judgment within their lawful discretion.").
[20] *United States Fidelity*, 837 F.2d at 120 (citing *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986), *abrogated on other grounds by Millbrook v. United States*, 133 S.Ct. 1441, 1446, 185 L.Ed.2d 531 (2013); *Berkovitz by Berkovitz v. United States*, 822 F.2d 1322, 1332 (3d Cir.1987), *reversed on other grounds by* 486 U.S. 531, 548, 108 S. Ct. 1954, 100 L.Ed.2d 531 (1988)).  Cases interpreting the Federal Tort Claims Act are instructive in addressing jurisdiction under the FSIA.  *See, e.g., Doe*, 557 F.3d at 1083.
[21] Complaint ¶¶ 5-9, 52, 59, 60-62, 77, 82-99, 127, 129, 132-134, 140-142, 147, 148, 154, 155, 161, 162, 168, 169.
[22] *Id.* ¶¶ 5, 54, 59, 61, 74-75, 78-82, 116, 133, 140, 148, 155, 162, 169.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1   export permit.[23]  Plaintiff further alleged that the conduct deprived her of her rights under

2   international law and the law of the state in which she was present (Washington).[24]  The filing of

3   false reports and the giving of false information to authorities is a crime under federal and state

4   law.[25]  In addition, giving false or misleading information to authorities regarding, for example,

5   the provision of weapons to terrorists, is a criminal offense under federal law.[26]  Furthermore, the

6   deprivation of rights under color of law, or conspiracy to intimidate, is a criminal offense under

7   federal law.[27]

8         The acts of the officers, for which the Government of Canada may be vicariously liable

9   or liable itself for directing, were not discretionary.  In *Reynolds v. United States*, the

10  investigators submitted a knowingly false affidavit to corrupt the fairness of the process.[28]  The

11  Seventh Circuit said the plaintiff stated a claim for relief because the investigators did not have

12  discretion to violate the law.[29]  The damage in that case led to prosecution; in this case, the

13  damage occurred before any prosecution, as discussed below.  In *Risk v. Halvorson*, a case cited

14  by Defendants, the court declined to find non-discretionary conduct because the defendants had

15  not clearly committed any illegal act.[30]

16        Taking the allegations in the complaint as true, here, Plaintiff pled the predicate facts to

17  prove that agents of the Government of Canada violated federal or Washington law, and the

18  damage to Plaintiff came as a direct result.  Whether reckless or intentional,[31] those criminal acts

19  are not discretionary and cannot form the basis for immunity.

---

20  [23] *Id.* ¶¶ 46-48.  *See also* Will Say of Tom Jones and Chris Fauquier at pp. 8-11 (Exhibit 2 to the Declaration of
    Andrew C. Lauersdorf ("Lauersdorf Decl.")).
21  [24] Complaint ¶ 141-42.
    [25] 18 U.S.C. 1001; RCW 9A.76.175.
22  [26] 18 U.S.C. 1038; 18 U.S.C. 2339A.
    [27] 18 U.S.C. 242; 18 U.S.C. 241.
23  [28] 549 F.3d 1108, 1112 (7th Cir. 2008).  *See also Limone*, 497 F.Supp.2d at 203.
    [29] *Reynolds*, 549 F.3d at 1113.
24  [30] 936 F.2d 393, 396-97 (9th Cir. 1991).
    [31] *See United States v. Schaffer*, 600 F.2d 1120, 1122 (5th Cir. 1979) ("Two recent Fifth Circuit opinions have
25  approved jury instructions in cases involving 18 U.S.C. s 1001 which equate 'knowledge' with 'reckless disregard of
    the truthfulness or falsity' of a statement coupled with a 'conscious effort to avoid learning the truth.' . . . The
26  Second Circuit has ruled that the knowledge requirement is satisfied by proof of a conscious purpose to avoid
    learning the truth, indicating that this is the type of 'deliberate ignorance' at issue.").

MALONEY | LAUERSDORF | REINER rc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

**(2)  Acts pursuant to a policy or mandate are not protected as discretionary.**

In the alternative, the engagement of U.S. authorities and the aggressive action on U.S. soil did not involve an "element of choice."  Plaintiff pled facts in her complaint to prove that the Government of Canada issued a mandate requiring aggressive action "to reinforce Canada's position with its partners in the international counter-proliferation community."[32]  Plaintiff pled facts to prove that actions taken in the U.S. were pursuant to a directive to "shut down" Plaintiff's company.[33]

If a policy promulgated by the foreign state requires a certain action that is later alleged to be wrongful, the decision to take that action does not involve "an element of judgment or choice" and is not, therefore, discretionary.[34]  In *O'Bryan v. Holy See*, the plaintiffs filed suit against the Holy See for damages arising out of sexual abuse by Catholic priests.[35]  The plaintiffs alleged that "(1) Defendants failed to *provide safe care* to children entrusted to their care; that (2) Defendants *failed to warn* parishioners that their children would be under the care of known or suspected pedophiles; and that (3) Defendants *failed to report* known or suspected child abuse to the appropriate authorities."[36]  The court found that the first claim was essentially one for negligent hiring and was protected as discretionary.[37]  The court, however, ruled that the other two claims (for failure to warn and failure to report) were not discretionary because the actions were taken pursuant to a policy promulgated by the Holy See.[38]

Plaintiff, here, pled facts to prove a mandate by the Government of Canada and a directive from CBSA Manager George Webb that resulted in the actions against Plaintiff in the

---

[32] Complaint ¶ 115.
[33] *Id.* ¶ 59.
[34] *O'Bryan*, 471 F.Supp.2d at 793 ("[I]f a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' the discretionary function exemption does not apply.") (citing *Berkovitz*, 486 U.S. at 536).
[35] *Id.* at 786.
[36] *Id.* at 793 (emphasis in original).
[37] *Id.*
[38] *Id.* at 793-94.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1   U.S.[39]  The Government of Canada, seeking to secure defense contracts from the United States,

2   instructed its agencies to seek out an export "violation" and criminal sanctions "to reinforce

3   Canada's position with its partners in the international counter-proliferation community."[40]

4   Plaintiff pled facts to prove that the CBSA incorporated the instruction into its business plan and

5   DFAIT incorporated it into its impact statement.[41]  DFAIT wrote that there would be "negative

6   consequences to Canada's domestic defence production industry if Canada is not perceived as

7   robustly enforcing the export controls under its laws and regulations."[42]  Pursuant to that

8   mandate, CBSA Manager George Webb directed that "this company has to be shut down."[43]

9   Plaintiff alleged that agents and officers intimidated employees and customers for the purpose of

10   shutting down the company at the direction of Webb and pursuant to the Government's

11   mandate.[44]  The actions were not discretionary.

12         **b.**     **The misrepresentation exemption does not apply.**

13        A "misrepresentation" under the FSIA does not mean any claim arising out of a

14   misstatement of fact.[45]  A "misrepresentation" under the FSIA is interpreted to require the

15   elements of the tort of misrepresentation.[46]  The Ninth Circuit holds that "the misrepresentation

16   exception precludes liability where the plaintiff suffers economic loss as a result of a commercial

17   decision which was based on a misrepresentation by government consisting either of false

18   statements or a failure to provide information which it had a duty to provide."[47]  The standard

19   "insulates the United States from liability only 'in those situations where a private individual

20

---

21   [39] Complaint ¶¶ 59, 115.

   [40] *Id.* ¶ 115.  *See also* Will Say of Tom Jones and Chris Fauquier at p. 7 (Exhibit 2 to Lauersdorf Decl.).

22   [41] *Id.*

   [42] *Id.*

23   [43] *Id.* ¶ 59.

   [44] *Id.*

24   [45] *Green v. U.S.*, 629 F.2d 581, 584 (9th Cir. 1980).  *See also Jimenez-Nieves v. U.S.*, 682 F.2d 1, 5 (1st Cir. 1982) ("[A]ll the cases here cited suggest that the word 'misrepresentation' in the Tort Claims Act should be confined to

25   its traditional, or core, meaning as a separate tort.  And, we can discern no congressional purpose that might have been served in defining it more broadly, to include false statements that are happenstance causal elements of other torts. Thus, the 'misrepresentation' exception does not apply.").

   [46] *Green*, 629 F.2d at 584.

26   [47] *Id.* at 584-85.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1    relies to his economic detriment on the advice of a government official.'"[48]

2    The cases discussing the misrepresentation exemption focus on (1) the commercial

3    setting of the misstatement and (2) the plaintiff's reliance on the misstatement.[49]  "The

4    Government is liable for injuries resulting from negligence in performance of operational tasks

5    even though misrepresentations are collaterally involved.  It is not liable, however, for injuries

6    resulting from commercial decisions made in reliance on government misrepresentations."[50]

7    Plaintiff does not allege that she relied on any misstatements to her detriment in her

8    commercial dealings.  Plaintiff alleged that the Government of Canada is liable for negligence or

9    the infliction of emotional distress because the Government engaged in harassment and

10    intimidation to force the "shut down" of Plaintiff's business.  The misstatements to U.S.

11    authorities and witnesses cannot form a claim for the tort of misrepresentation, and, therefore, do

12    not fall within the FSIA's exemption for misrepresentations.

### c.    The exemptions for malicious prosecution and abuse of process do not apply.

15    Both "malicious prosecution" and "abuse of process" under the FSIA require damages

16    arising out of the misuse of criminal proceedings.  For example, in cases discussing malicious

17    prosecution, the damage arises out of the "procurement" of criminal proceedings and "the

18    plaintiff must establish a 'chain of causation' linking the defendant's actions with the initiation

19    of criminal proceedings."[51]

---

[48] *Park v. U.S.*, 517 F. Supp. 970, 979 (9th Cir. 1981) (citing *Green*, 629 F.2d at 584).
[49] *See, e.g.*, *Green*, 629 F.2d at 584 ("[T]he applicability of the exception depends upon the commercial setting within which the economic loss arose."); *Guild v. U.S.*, 685 F.2d 324, 325 (9th Cir. 1982) ("The misrepresentation exception applies to claims for damages resulting from commercial decisions based upon false or inadequate information provided by the government."); *Jimenez-Nieves*, 682 F.2d at 5 ("[T]hat statement was not made to the plaintiff and he did not rely upon it.  That is sufficient to remove this case from the core, or traditional, view of 'misrepresentation' as a separate tort.").
[50] *Guild*, 685 F.2d at 325 (citing *Preston v. United States*, 596 F.2d 232, 238 (7th Cir.)).
[51] *Moore v. United States*, 213 F.3d 705, 710 (D.C. Cir. 2000) (citations omitted).  *See also Thuillard v. United States*, 385 Fed. Appx. 650, 650-51 (9th Cir. 2010); *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) ("Malicious prosecution has five elements under Washington law:  1) the defendant began or continued a prosecution; 2) without probable cause; 3) with malice; 4) in a proceeding terminated in the plaintiff's favor; 5) to plaintiff's injury.").

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1   Plaintiff did not plead a claim for malicious prosecution and does not seek damages

2   resulting from criminal proceedings in Canada.  First, the wrongful conduct of which Plaintiff

3   complains arose out of the Government of Canada's conduct in the United States.[52]  Second, the

4   company had already been shut down and Plaintiff had lost her home and safe conduct in the

5   U.S. before the indictment was filed.[53]

6   Indeed, the investigation in the United States had no logical bearing upon the actual

7   charges in Canada.  The indictment alleged two charges for export violations.  To succeed on the

8   charges, the prosecutor need only compare the seized goods to the Export Control List to

9   determine whether the goods were controlled.  If the goods are on the list, they are controlled and

10  require an export permit.  If they are not on the list, they are not controlled and do not require a

11  permit.  The elements of the charges do not require the prosecutor to interview employees and

12  customers, take evidence from witnesses suggesting the existence of a "front company," or

13  request documents from third parties.  A violation of Canadian export laws would not suggest

14  any reason to involve the FBI or U.S. Attorney's Office in Seattle.  It was not the prosecution

15  that caused the damage; it was the harassment and intimidation in the U.S. that resulted in the

16  destruction.

17  The cases cited by Defendants—*General Dynamics Corp. v. U.S.*[54] and *Blaxland v.*

18  *Commonwealth Director of Public Prosecutions*[55]—prove the point.  In *General Dynamics*, the

19  damage arose out of a criminal prosecution, although the plaintiff attempted to target the entity

20  that provided information for that prosecution.  In *Blaxland*, the plaintiff targeted the prosecutor

21  directly.  The courts recognized the discretionary function of the prosecutor in choosing to

22  charge.

23  Here, the damage arose before any charges were laid.  As in *In re Glacier Bay*, little

24

---

25  [52] Complaint ¶ 59.
    [53] Complaint ¶¶ 59, 67-68.  de Jaray Decl. ¶ 7.
26  [54] 139 F.3d 1280 (9th Cir. 1998).
    [55] 323 F.3d 1198 (9th Cir. 2003).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

intervened between Defendants' wrongdoing and the injury to Plaintiff.[56]  The prosecution cannot be said to be an intervening discretionary act when the injury arose before the indictment was filed.

### 4.      The Government of Canada waived its immunity.

Section 1605(a)(1) states that a foreign state relinquishes its claim to immunity when the foreign state "waive[s] the immunity either explicitly or by implication."  The legislative history suggests that "implicit waivers are reflected in actions relating to adjudication and explicit waivers are found in treaties."[57]  House Report No. 94-1487 on the FSIA provides:

> Section 1605(a)(1) (of title 28) treats explicit and implied waivers by foreign states of sovereign immunity.  With respect to explicit waivers, a foreign state may renounce its immunity by treaty, as has been done by the United States with respect to commercial and other activities in a series of treaties of friendship, commerce, and navigation, or a foreign state may waive its immunity in a contract with a private party.  Since the sovereign immunity of a political subdivision, agency or instrumentality of a foreign state derives from the foreign state itself, the foreign state may waive the immunity of its political subdivisions, agencies or instrumentalities.
>
> With respect to implicit waivers, the courts have found such waivers in cases where a foreign state has agreed to arbitration in another country or where a foreign state has agreed that the law of a particular country should govern a contract.  An implicit waiver would also include a situation where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity.[58]

Federal courts unanimously find that "an implied waiver may arise where a foreign state concludes a contract that contains a choice-of-law clause designating the laws of the United States as applicable."[59]  These courts explain that "U.S. courts are clearly best able to interpret and apply the laws of this country."[60]  It is for that reason that courts agree that "choice-of-law

---

[56] *See General Dynamics*, 139 F.3d at 1285 (discussing *In re Glacier Bay*, 71 F.3d 1447 (9th Cir. 1995)).
[57] *Harris v. VAO Intourist, Moscow*, 481 F. Supp. 1056, 1058 (E.D. N.Y. 1979).
[58] *Id.* (citing H.R. Rep. No. 94-1487, 94th Congress, 2d Sess. 13, Reprinted in (1976) U.S. Code Cong. & Admin. News, pp. 6604, 6617).
[59] *Ashraf-Hassan v. Embassy of France in the United States*, 40 F.Supp.3d 94, 100 (D.C. 2014) (citing *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161 n.11 (D.C. Cir. 2002)).
[60] *Id.* (citing *Transamerican S.S. Corp. v. Somali Democratic Republic*, 767 F.2d 998, 1006 (D.C. Cir. 1985)).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1 clauses designating U.S. law as applicable appear to 'contemplate a role for United States courts'

2 in resolving disputes."[61]

3        The Government of Canada contemplated a role for U.S. courts when it agreed to follow

4 U.S. law in its investigation on U.S. soil.  Plaintiff has alleged that the Defendants made a

5 request for assistance under the Inter-American Convention on Terrorism ("IACT"), which

6 requires "cooperation and the exchange of information in order to improve border and customs

7 control measures to detect and prevent the international movement of terrorists and trafficking in

8 arms or other materials to support terrorist activities."[62]  Under that treaty, the Government of

9 Canada agreed that "[a]ny person who is taken into custody or regarding whom any other

10 measures are taken or proceedings are carried out pursuant to this Convention shall be

11 guaranteed fair treatment, including the enjoyment of all rights and guarantees *in conformity with*

12 *the law of the state in the territory of which that person is present* and applicable provisions of

13 international law."[63]

14        Plaintiff alleged in her complaint that actions were taken pursuant to the IACT.[64]

15 Plaintiff also alleged that she was living and working in Washington State when the wrongful

16 conduct began.[65]  Taking the allegations in the complaint as true, the Government of Canada

17 accepted the application of U.S. law to govern its conduct.[66]  That choice of law constitutes a

18 waiver under the FSIA.[67]  It is that very conduct for which Plaintiff seeks redress.[68]

19        Whether Defendants chose to request assistance pursuant to the IACT or some other

20 _____

[61] *Id.* (citing *Maritime Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1103 (D.C. Cir. 1982)).
[62] Inter-American Convention Against Terrorism, art. 7, available at:
21 http://www.oas.org/xxxiiga/english/docs_en/docs_items/agres1840_02.htm.
[63] *Id.* at art. 15 (emphasis added).
22 [64] Complaint ¶ 141.  The IACT is not confined to the "offenses" listed in Article II, as the Defendants argue.  The IACT broadly applies to cooperation amongst the parties in an effort "to prevent, punish, and eliminate terrorism."
23 Inter-American Convention Against Terrorism, art. 1.  Article 7, requiring cooperation on border controls, does not limit its application to any specified "offenses."  Plaintiff's allegations of mutual assistance based on allegations of
24 illegal arms-dealing and terrorism must be accepted as true.
[65] Complaint  ¶¶ 4, 10.
25 [66] Inter-American Convention Against Terrorism, art. 15.
[67] *Ashraf-Hassan*, 40 F.Supp.3d at 100.
26 [68] *See, e.g.*, Complaint ¶¶ 5-9, 52, 59-62, 77, 82-99, 127, 129, 132-134, 140-142, 147-148, 154-155, 161-162, 168, 169.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  treaty is a question of fact that cannot be determined on a Rule 12 motion.  If Defendants

2  requested assistance pursuant to another mutual assistance treaty, they may have waived their

3  immunity under that treaty.  For example, Plaintiff has evidence that the Government of Canada

4  also made a request for assistance under a treaty for "Mutual Legal Assistance in Criminal

5  Matters" (the "MLAT") for information about the Apex facility in Canada.[69]  Under the MLAT,

6  Canada may seek the assistance of the United States which, under the MLAT, is "authorized to

7  order lawful disclosure of such information as is necessary to enable the Requested State to

8  execute the request" and "to issue subpoenas, search warrants, or other orders necessary to

9  execute the request."[70]  The evidence suggests that one U.S. entity, Lattice, gave information

10  voluntarily, but it is unknown how the Government of Canada sought access to other U.S.

11  witnesses and companies.[71]  It is unknown as of yet the extent to which the Government of

12  Canada availed itself of U.S. courts to carry out any request under the MLAT.[72]

13      The Ninth Circuit found an implied waiver in *Siderman de Blake v. The Republic of*

14  *Argentina* because the government of Argentina availed itself of California state courts by

15  requesting service of process through the court.[73]  The court concluded that, "[i]f Argentina has

16  engaged our courts in the very course of activity for which the Sidermans seek redress, it has

17  waived its immunity as to that redress."[74]

18      Plaintiff, here, has alleged the same type of "direct connection"[75] between the sovereign's

19  activities and Plaintiff's claims for relief.[76]  Plaintiff alleged that the Government of Canada

20  involved the United States Government in the effort to "shut down" Plaintiff's company by

---

[69] Email from Preshaw to Varga (Exhibit 1 to de Jaray Decl.).  *See also* Treaty Between the Government of the United States of America and the Government of Canada on Mutual Legal Assistance in Criminal Matters, available at:  https://www.oas.org/juridico/mla/en/traites/en_traites-mla-usa-can.pdf.
[70] *Id.*, art. VI, VII.
[71] Email from Nils Preshaw to Kevin Varga (Exhibit 1 to de Jaray Decl.).
[72] *Id.*
[73] 965 F.2d 699, 720 (9th Cir. 1992).
[74] *Id.* at 722.
[75] *Id.*
[76] *See, e.g.,* Complaint ¶¶ 5-9, 52, 59-62, 77, 82-99, 127, 129, 132-134, 140-142, 147, 148, 154, 155, 161, 162, 168, 169.

Page 13– PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS;
         Case No. 2:16-cv-00571

MLR
MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  contacting U.S.-based customers (like Boeing, Rockwell Collins, and Alpha Technologies),

2  interrogating U.S.-based employees, and threatening witnesses with criminal charges.[77]  Plaintiff

3  alleged that the Government of Canada falsified documents as a pretext to U.S. involvement.[78]  If

4  the Government of Canada availed itself of U.S. courts to access witnesses and evidence located

5  in the United States pursuant to the MLAT, it has waived immunity.[79]  Plaintiff's claims for

6  redress arise out of that very conduct.[80]

7      **5.      The FSIA's "commercial acts" exception precludes immunity.**

8          The FSIA's "commercial acts" exception precludes immunity under three different

9  grounds.[81]  Plaintiff pled facts in reliance on the latter two (referred to here as the "second

10  clause" and the "third clause").  A sovereign is not entitled to immunity in any case in which the

11  action is based "upon an act performed in the United States in connection with a commercial

12  activity of the foreign state elsewhere" [the "second clause"] or "upon an act outside the territory

13  of the United States in connection with a commercial activity of the foreign state elsewhere and

14  that act causes a direct effect in the United States" [the "third clause"].[82]

15          The Court must first consider whether Plaintiff alleged any "commercial activity."  Under

16  the FSIA, "the commercial character of an act is to be determined by reference to its 'nature'

17  rather than its 'purpose.'"[83]  Thus, "the question is not whether the foreign government is acting

18  with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives."[84]  The

19  question, rather, "is whether the particular actions that the foreign state performs (whatever the

20  motive behind them) are the type of actions by which a private party engages in 'trade and traffic

21  _____

22  [77] Complaint ¶¶ 59-62.
    [78] *Id*. ¶¶ 59-62, 82-90.

23  [79] Treaty Between the Government of the United States of America and the Government of Canada on Mutual Legal Assistance in Criminal Matters, art. VI, VII.

24  [80] *See, e.g.*, Complaint ¶¶ 5-9, 52, 59, 60-62, 77, 82-99, 127, 129, 132-134, 140-142, 147, 148, 154, 155, 161, 162, 168, 169.
    [81] 28 U.S.C. 1605(a)(2).

25  [82] *Id.*
    [83] *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614, 112 S. Ct. 2160, 119 L.Ed.2d 394 (1992) (citing 28 U.S.C. 1603(d)).

26  [84] *Id.*

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  or commerce.'"[85]  Under Supreme Court authority, "when a foreign government acts, not as

2  regulator of a market, but in the manner of a private player within it, the foreign sovereign's

3  actions are 'commercial' within the meaning of the FSIA."[86]

4         Plaintiff alleged the predicate facts to prove that the Government of Canada was engaged

5  in "commercial activity."  Plaintiff alleged that the Government of Canada was attempting to

6  "secure contracts for military goods and services" for Canadian governmental agencies as well as

7  private contractors.[87]  A contract for goods and services is presumptively commercial.[88]

8         For the second clause to apply, the Court must consider whether Plaintiff's suit is "based

9  upon an act performed in the United States in connection with" that commercial activity

10  elsewhere.[89]  Plaintiff alleged that the Government of Canada took action in the United States to

11  "shut down" her company by harassing and intimidating Plaintiff and her employees and

12  customers.[90]  Plaintiff alleged that the Government took those actions in order to win favor with

13  the U.S. and secure the defense contracts.[91]

14         In the alternative, for the third clause to apply, the Court must first consider whether

15  Plaintiff's suit is "based upon an act outside the territory of the United States in connection with"

16  that commercial activity.[92]  Plaintiff alleged that the Government of Canada issued a mandate to

17  require aggressive action to avoid "negative consequences to Canada's domestic defence

18  production industry."[93]  The Government of Canada, through CBSA Manager George Webb,

19  issued a directive to "shut down" Plaintiff's company as part of its efforts to win favor with the

20

21  _____

22  [85] *Id.*
    [86] *Id.*

23  [87] Complaint ¶¶ 2, 101-117.
    [88] *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1549 (D.C. Cir. 1987).
    [89] 28 U.S.C. 1605(a)(2).  *See also Saudi Arabia v. Nelson*, 507 U.S. 349, 357-58, 113 S. Ct. 1471, 123 L.Ed.2d 47

24  (1993) (discussing the different nexus required for application of the first clause of the commercial activity
    exception, as opposed to the second and third clauses).

25  [90] Complaint ¶ 59.
    [91] *Id.* ¶¶ 2-3, 100-117.

26  [92] 28 U.S.C. 1605(a)(2).
    [93] Complaint ¶ 115.

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1  U.S. and secure the military contracts.[94]  The Court must next consider whether the act

2  performed outside the United States caused a "direct effect" in the United States.[95]  Plaintiff

3  alleged predicate facts to prove that the mandate caused a direct effect when government agents

4  worked to "shut down" Plaintiff's company in the United States.[96]

5        Taking the allegations as true, Plaintiff pled facts to prove that the Government of

6  Canada was acting not as a regulator of the market, but as a private player within it when it took

7  actions in the United States in order to secure contracts for its domestic defense production

8  industry.  Plaintiff pled predicate facts to establish jurisdiction under the FSIA.

9  **B.    The Court has jurisdiction over the Individual Defendants under the ATS.**

10       The ATS confers original jurisdiction upon this Court when the following three

11  conditions are satisfied:  (1) an alien sues, (2) for a tort, (3) committed in violation of the law of

12  nations (*i.e.*, international law).[97]  In *Sosa v. Alvarez-Machain*,[98] the United States Supreme

13  Court identified three paradigmatic violations of the law of nations triggering jurisdiction under

14  the ATS: violation of safe conducts, infringement upon the rights of ambassadors, and piracy.[99]

15  Plaintiff pled a cause of action for damages caused directly by the Individual Defendants'

16  violation of Plaintiff's safe conducts.[100]

17       Mere lawful presence of an alien within the United States creates an implied assurance of

18  safe conduct and gives an alien certain rights.[101]   The basis for alleging a violation of safe

19  conducts in the context of the ATS was discussed at length by the Sixth Circuit in *Taveras v.*

20

21  ─────────────────────

22  [94] *Id.* ¶ 59, 101-117.
   [95] 28 U.S.C. 1605(a)(2).
   [96] *Id.* ¶ 59, 101-117.

23  [97] *Kadic v. Karadzic*, 70 F.3d 232, 238 (2d Cir. 1995).
   [98] 542 U.S. 692, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004).

24  [99] *Institute of Cetacean Research v. Shepherd Conservation Society*, 153 F.Supp.3d 1291, 1302 (W.D. Wash. 2015)
   (citing *Sosa*, 542 U.S. at 724).

25  [100] Complaint ¶¶ 131-137.
   [101] *Johnson v. Eisentrager*, 339 U.S. 763, 770, 70 S.Ct. 936, 94 L.Ed. 1255 (1950).  *See, also, In re Baiz*, 135 U.S.

26  403, 420, 10 S.Ct. 854, 34 L.Ed. 222 (1890) ("Section 4062," now 18 U.S.C. § 1545, "[* * *] [was] drawn from the
   statute 7 Anne, c. 12, which was declaratory simply of the law of nations.")

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1   *Taveraz*, a case cited by Defendants.[102]  The term "safe conducts" refers to both a privilege

2   granted to an alien providing for safe travel within and through a nation, and the document

3   imparting that privilege.[103]  The *Taveras* court specifically recognized a visitor's visa as a safe

4   conduct document.[104]

5          A violation of safe conducts occurs when an alien's privilege to pass safely within and

6   through the host nation is infringed and the alien consequently suffers injury to their person or

7   property.[105]  "Committing acts of hostilities against such as are here under a general implied

8   safe-conduct [is a breach] of the public faith, without the preservation of which there can be no

9   intercourse or commerce between one nation and another."[106]  The purpose of the doctrine of

10  safe conducts under the law of nations is to protect the safety and security of the person and

11  property of the journeying alien bearing the safe conduct privilege.[107]

12         Plaintiff has alleged the predicate facts to prove that the Individual Defendants infringed

13  upon Plaintiff's privilege to pass safely into, within, and through the United States, and Plaintiff

14  consequently suffered injury to both her person and property.  Plaintiff alleges that the Individual

15  Defendants falsified information, provided that false information to U.S. authorities in

16  contravention of U.S. law,[108] falsely accused Plaintiff of engaging in terrorism and international

17  arms trading, and manipulated the FBI and U.S. Customs and Border Protection into conducting

18  an unwarranted investigation of Plaintiff that ultimately resulted in the revocation of Plaintiff's

19  L1A visa and Plaintiff's exclusion from the United States.[109]  Plaintiff suffered emotional

---

[102] 477 F.3d 767, 772-775 (6th Cir. 2007).

[103] *Id.* at 773.

[104] *Id.* at 774.

[105] *Id.* at 773 (citing William Blackstone, *Commentaries on the Laws of England*, Vol. 4, 68-69 (1769)).  *See, also,* Thomas H. Lee, *The Safe-Conduct Theory of the Alien Tort Statute*, 106 Colum. L. Rev. 830, 874 (2006).

[106] *Id.*, *quoting* Blackstone, *supra.*

[107] *Id.* at 773-774.

[108] 18 U.S.C. § 1001 (2006) (Statements or entries generally); 18 U.S.C. § 241 (1996) (Conspiracy against rights); 18 U.S.C. § 242 (1996) (Deprivation of rights under color of law); 18 U.S.C. § 1545 (1948) (Safe conduct violation).

[109] Complaint ¶¶ 6-7, 82-99.  Plaintiff was turned away from the United States and forced to surrender her L1A visa, a safe conduct, to U.S. Customs and Border Protection agents in Blaine, Washington, upon attempting to re-enter the United States and return to her home in Bellingham, Washington, in late-2009 as a direct result of the Individual Defendants' false reporting, pretext investigation, and manipulation of the FBI and U.S. Customs and Border

---

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1   distress and physical injury to her person, and the loss of her business and real property interests

2   in the United States.[110]  These allegations of fact are sufficient, as a matter of law, to establish

3   subject matter jurisdiction under the ATS based upon a violation of safe conducts.

4        Defendants argue that safe conduct has no relevance in this case, and appear to suggest

5   that safe conduct is a narrow concept only applicable in the law of armed conflict.[111]  Defendants

6   cite no precedent or authority in support of this assertion, however, and Plaintiff can find none.

7        Plaintiff further alleged ATS jurisdiction through a violation of the IACT, discussed

8   above.  Courts recognize that international treaties are evidence of customary international law,

9   whether self-executing or not.[112]  Plaintiff alleged that the Individual Defendants were required

10  to act "in conformity with the law of the state in the territory of which that person is

11  present,"[113]—Washington in this case.  Plaintiff alleged that the Individual Defendants took

12  actions in violation of international and U.S. law in Washington State.[114]

13       The "official acts" immunity does not help Defendants here.  The "official acts"

14  immunity does not apply to acts outside the scope of authority.[115]  There is a question of fact as

15  to whether the Individual Defendants were acting outside the scope of their authority when they

16  violated the law.

17       In addition, the Fourth Circuit has specifically recognized that official acts immunity

18  does not apply to violations of *jus cogens*.[116]  "A *jus cogens* norm, also known as a 'peremptory

19  norm of general international law,' can be defined as 'a norm accepted and recognized by the

20  international community of States as a whole as a norm from which no derogation is permitted

21

---

22  Protection.  de Jaray Decl. ¶ 6-8.  Plaintiff's safe conduct was further infringed when the FBI issued a warrant for
    Plaintiff's arrest based upon the falsified information provided to the FBI by the Individual Defendants.  *Id.* at ¶ 9.
23  [110] Complaint ¶¶ 131-144.
    [111] Motion to Dismiss, at p. 16 [Dkt. No. 22].
24  [112] *Bowoto v. Chevron Corp.*, 557 F.Supp.2d 1080, 1090 (N.D. Cal. 2008).
    [113] Inter-American Convention on Terrorism, art. 15.
25  [114] *See, e.g.*, Complaint ¶¶ 5-6, 59, 82-90, 139-42.
    [115] *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1106 (9th Cir. 1990); *Mireskandari v. Mayne*, No. CV 12-
    3861 JGB (MRWx), 2016 WL 1165896, at *16 (C.D. Cal., March 23, 2016).
26  [116] *Yousuf v. Samantar*, 699 F.3d 763, 775 (4th Cir. 2012).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

and which can be modified only by a subsequent norm of general international law having the same character.'"[117] *Jus cogens* generally concerns egregious acts such as torture.[118]  The Supreme Court, however, has left open the discretion of district courts to determine the norms of international law.[119]  Although the Ninth Circuit has yet to rule on the application of "official acts" immunity to violations of international law, at least one federal district court in the Ninth Circuit has ruled that there is no such immunity.[120]  Plaintiff, here, alleged that the Individual Defendants acted in violation of international law.[121]  For the same reasons that ATS jurisdiction attaches, "official acts" immunity does not.

## C.    The *forum non conveniens* doctrine does not apply.

The Ninth Circuit recognizes the principle of *forum non conveniens* as "'an exceptional tool to be employed sparingly,' and not a 'doctrine that compels plaintiffs to choose the optimal forum for their claim.'"[122]  The purpose of the doctrine "is to root out cases in which the 'open door' of broad jurisdiction and venue laws 'may admit those who seek not simply justice but perhaps justice blended with some harassment.'"[123]  The doctrine does not apply simply on the basis that the case involves foreign parties:  "The mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal."[124]  Instead, "[t]o prevail on a motion to dismiss based upon forum non conveniens, a defendant bears the burden of demonstrating an adequate alternate forum, and that the balance of private and public interest factors favors dismissal."[125]  A defendant asserting *forum non conveniens* "bears a 'heavy burden of showing that [the chosen forum] results in oppressiveness and vexation . . . out of all proportion' to the

---

[117] *Id.* (citations omitted).

[118] *See id.* at 776.

[119] *Bowoto*, 557 F.Suppp.2d at 1089.

[120] *Mireskandari*, 2016 WL 1165896, at *17.

[121] *See, e.g.*, Complaint ¶¶ 5-6, 59, 82-90, 139-42.

[122] *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)).

[123] *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839, 91 L.Ed 1055 (1947)).

[124] *Id.* (citing *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181-82 (9th Cir. 2006)).

[125] *Id.*



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1   plaintiff's convenience."[126]

2   **1.**      **Canada is not an adequate alternate forum.**

3      Defendants assume that Canada is a "suitable alternate forum" because they have ignored

4 the conduct that occurred in the U.S. and the damage done to Plaintiff in the U.S.

5      In addition, "an adequate forum does not exist if a statute of limitations bars the bringing

6 of the case in that forum."[127]   Defendants argue in their motion that Canada is a "suitable

7 alternate forum," but the Defendants had already asserted in informal communications pre-suit

8 that Plaintiff's claim would be barred in Canada under the statute of limitations.[128]   Presumably,

9 Defendants were assuming that the applicable statute of limitations in Canada required Plaintiff

10 to bring her civil suit in Canada within "three months after the time when the cause of action or

11 the subject-matter of the proceeding arose."[129]   Even assuming that the cause of action or

12 subject-matter arose when the Government of Canada dropped the charges against Plaintiff in

13 August 2011, Plaintiff would have had to file in Canada by November 2011.[130]   The Government

14 of Canada, however, was still working with the FBI and the U.S. Attorney's Office in Seattle at

15 that time to persecute Plaintiff.[131]

16      Defendants' assertion of inconvenience fails for lack of an adequate alternate forum.

17   **2.**      **The balance of private and public interest factors favors venue.**

18      To bear their burden to prove *forum non conveniens*, Defendants must also prove that

19 private and public interest factors favor dismissal.   Plaintiff requested limited discovery[132] to

20

21

22   [126] *Id.* at 1227 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S. Ct. 252, 70 L.Ed.2d 419 (1981)).
[127] *Bank of Credit and Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001).

23 [128] de Jaray Decl. ¶ 10.
[129] Customs Act of Canada, § 106, available at: http://laws-lois.justice.gc.ca/eng/acts/c-52.6/page-29.html#h-77.
[130] Complaint ¶ 124.

24 [131] Complaint ¶ 127. Email from Todd Greenberg to Mark Bartlett, dated November 27, 2013 (Exhibit [ ] to Lauersdorf Decl.).

25 [132] *See* Motion to Dismiss at pp. 20-24 [Dkt. 22]. *See also Bridgestone*, 131 F. Supp.2d at 1030 ("[D]iscovery should establish what pieces of evidence are important to the cause of action and to potential defenses. Then, discovery must focus on the 'location of these important sources of proof.'") (citing *Van Cauwenberghe*, 486 U.S. at

26 528; *Fitzgerald v. Texaco, Inc.* , 521 F.2d 448, 451 n.3 (2d Cir. 1975)).

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1   respond to Defendants' broad and unsupported assertions of inconvenience.[133]   Defendants focus

2   their *forum non conveniens* analysis on the location of the parties and the witnesses.[134]   They

3   assert, without citation or support, that all wrongful conduct occurred in Canada.[135]   They also

4   assert, without citation or support, that all witnesses and evidence will be located in Canada.[136]

5        Plaintiff's claims arise out of Defendants' unlawful acts to engage U.S. authorities, which

6   allowed Defendants to gain access to Plaintiff's employees, customers, and suppliers on U.S.

7   soil, largely in Washington State.[137]   It was that conduct that ultimately destroyed Plaintiff's life,

8   work, and ability to lawfully stay in the United States.[138]

9        Plaintiff was living in Bellingham, Washington, and working in Ferndale, Washington, at

10   the time that the Canadian pretext investigation began.[139]   Canadian authorities, seeking to exert

11   pressure on Plaintiff in the U.S., reached out to the FBI and the US Attorney's office in Seattle,

12   Washington.[140]   There is evidence that the Defendants contacted witnesses, including Apex

13   employees, customers, and suppliers, in Washington State.  For example, Defendant Varga held

14   a meeting in Seattle, Washington with top level executive Bob Rodgers from Apex customer,

15   NAT.[141]   Varga also held a meeting in Everett, Washington with NAT Operations Manager

16   Randy Wood.[142]   Varga created reports of each interview disclosing the location.[143]

17        Plaintiff has information that Defendants were contacting Apex employees at the

---

[133] Plaintiff moved for an extension of time to file this opposition brief pending the Court's ruling on a separately-filed motion for discovery.  The Court expressed frustration over the separately-filed motions and noting dates. [Dkt. No. 30]  The Local Rules require that Plaintiff note her motion for extension as a "two Friday motion" and her motion for discovery as a "three Friday motion."  LR 7(d).  The Local Rules further require that Plaintiff file her motion for extension in advance of the deadline to respond to Defendants' motion to dismiss.  LR 7(j).  Plaintiff moved for the extension of time to respond in order to give the Court sufficient time to consider the motion for discovery consistent with the noting requirements under the Local Rules.

[134] Motion to Dismiss at p. 21 [Dkt. No. 22].

[135] *Id.*

[136] *Id.*

[137] *See, e.g.*, Complaint ¶¶ 6-9, 52, 59, 60-62, 77, 82-99, 127, 129, 132-134, 140-142, 147, 148, 154, 155, 161, 162, 168, 169.

[138] *Id.*

[139] *Id.* ¶ 23.

[140] *Id.* ¶ 82; Email from Todd Greenberg to Mark Bartlett, dated November 27, 2013 (Exhibit 1 to Lauersdorf Decl.).

[141] Report of Interview with Bob Rodgers (Exhibit 3 to de Jaray Decl.).

[142] Report of Interview with Randy Wood (Exhibit 4 to de Jaray Decl.).

[143] *Id.*

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1   Ferndale, Washington facility.  Former Apex employees—Holly Swartos, Murray Erickson, and

2   Chris Baker—have each submitted a declaration in support of Plaintiff based on their personal

3   knowledge of contacts made by Canadian investigators who were dropping off business cards

4   and meeting with U.S.-based employees of Apex.[144]

5          It was the unlawful manipulation of U.S. authorities and the intimidation of witnesses and

6   Plaintiff on U.S. soil that ultimately caused Plaintiff's damage.[145]  After Canadian authorities

7   contacted witnesses in the United States and suggested that Plaintiff was involved in arms

8   dealing and counter-proliferation, customers rescinded their contracts with Apex and employees

9   walked away from the company to find other work.[146]  The company was forced to fold.[147]

10  Plaintiff was ordered to surrender her L1A Visa, refused re-entry into the U.S., and consequently

11  lost her home in foreclosure.[148]  All the while, the information provided by Defendants to the

12  FBI and U.S. authorities was false, and the Defendants knew it was false.

13         The private and public interest factors favor venue in this Court.  The tortious conduct

14  occurred in the United States, which involved U.S. authorities, U.S. witnesses, and Plaintiff as a

15  U.S. resident at the time.

16         Defendants committed wrongful acts on U.S. soil in Washington State and now assert

17  that it would be inconvenient to answer for that conduct in a U.S. court in Washington State.

18  Defendants have failed to carry their heavy burden under *forum non conveniens*.  In the event the

19  Court requires additional evidence of conduct in the U.S., Plaintiff requests discovery of

20  Defendants' contacts with authorities and witnesses in Washington State to refute the assertions

21  of *forum non conveniens*, or act of state or international comity as discussed below.[149]

22

23

---

24  [144] *See* Declarations of Holly Swartos, Murray Erickson, and Chris Baker.
    [145] Complaint ¶¶ 60-62.  *See also* Declarations of Holly Swartos, Murray Erickson, and Chris Baker.
25  [146] Complaint ¶¶ 60-62.
    [147] *Id.*
26  [148] *Id.* ¶ 99.  *See also* de Jaray Decl. ¶ 6-8.
    [149] *See* Plaintiff's Motion for Leave to Seek Discovery [Dkt No. 26].

Page 22—  PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS;
         Case No. 2:16-cv-00571

MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

**D.      The "act of state" doctrine does not apply.**

The "act of state" doctrine is a principle of abstention that may apply where "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed *within its own territory*."[150]  The United States Supreme Court articulates the doctrine in this way:  "Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them.  The act of state doctrine does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid."[151]

Defendants, here, argue without evidence that the conduct complained of occurred entirely in Canada.[152]  As discussed above, the complaint alleges wrongful conduct in the United States.[153]  Plaintiff has evidence of wrongful conduct in Washington State.[154]  Defendants have failed to carry their burden to prove wrongful conduct occurring entirely within Canada.

**E.      The "international comity" doctrine does not apply.**

The Ninth Circuit recognizes "two distinct doctrines which are often conflated under the heading 'international comity.'"[155]  The first—legislative or "prescriptive" comity—"guides domestic courts as they decide the extraterritorial reach of federal statutes."[156]  Cases involving "prescriptive" comity require proof of a "true conflict" between domestic and foreign law; for example, where a party claims that it is subject to conflicting regulatory schemes in the U.S. and a foreign nation, and it cannot comply with both.[157]

---

[150] *W.S. Kirkpatrick & Co., Inc. v. Envtl Tectonics Corp., Int'l*, 493 U.S. 400, 405, 110 S. Ct. 701, 107 L.Ed.2d 816 (1990) (emphasis added).
[151] *Id.* at 409.
[152] Motion to Dismiss at p. 23 [Dkt. No. 22].
[153] *See, e.g.*, Complaint ¶¶ 6-9, 52, 59, 60-62, 77, 82-99, 127, 129, 132-134, 140-142, 147, 148, 154, 155, 161, 162, 168, 169.
[154] *See, supra*, section IV.C.
[155] *Mujica v. AirScan, Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) (citing *In re S. African Apartheid Litig.*, 617 F.Supp.2d 228, 283 (S.D.N.Y. 2009)).
[156] *Id.* (citations omitted).
[157] *Id.* at 600.



MALONEY | LAUERSDORF | REINER PC
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1    The second—"comity among courts" or "adjudicatory" comity—involves "the discretion

2    of a national court to decline to exercise jurisdiction over a case before it when that case is

3    pending in a foreign court with proper jurisdiction."[158]  "Adjudicatory" comity requires that the

4    court consider "a range of factors when deciding whether to abstain from exercising jurisdiction

5    due to a past or potential judicial proceeding elsewhere."[159]  Both concepts require the court to

6    consider whether another sovereign has a legitimate claim to jurisdiction.[160]

7    Defendants do not state whether they believe this case involves "prescriptive" or

8    "adjudicatory" comity.[161]  They do not assert that they are subject to conflicting laws in Canada

9    or that there is a past or potential judicial proceeding elsewhere.[162]  On that basis alone,

10   "international comity" does not apply.  The purpose of the doctrine is to avoid the application of

11   conflicting laws or lawsuits between nations.[163]

12   The motion to dismiss does not address any conflicting laws and, instead, states four of

13   the seven relevant factors articulated by the Ninth Circuit and attempts only to describe the

14   interests of Canada in the subject matter of this litigation.[164]  Defendants state without support

15   that the case does not involve any "countervailing nexus" to the United States or any party.[165]

16   Plaintiff has alleged wrongful conduct in the United States.[166]  The "countervailing

17   nexus" to the United States is the tortious conduct that occurred in the United States, which

18   involved U.S. authorities, U.S. witnesses, and Plaintiff as a U.S. resident at the time.

19

---

20   [158] *Id.* at 599 (citing *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir. 2005)).

21   [159] *Id.* at 600-01 (citations omitted).

22   [160] *Id.* at 598 ("International comity is a doctrine of prudential abstention, one that 'counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law.") (citing *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 8 (1st Cir. 1997)).

23   [161] Motion to Dismiss at pp. 23-24 [Dkt. No. 22].

24   [162] *See Mujica*, 771 F.3d at 600-01.

     [163] *Id.* at 598.

25   [164] Motion to Dismiss at pp. 23-24 [Dkt. No. 22].

     [165] *Id.* at p. 24.

26   [166] *See, e.g.*, Complaint ¶¶ 6-9, 52, 59, 60-62, 77, 82-99, 127, 129, 132-134, 140-142, 147, 148, 154, 155, 161, 162, 168, 169.

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518
Facsimile: 503.245.1417

1

**III.  CONCLUSION**

2

Based upon the foregoing, Plaintiff requests that the Court deny Defendants' motion to

dismiss.

3

4

DATED:  October 17, 2016

5

MALONEY LAUERSDORF REINER, PC

6

7

By  /s/Andrew C. Lauersdorf
Andrew C. Lauersdorf, WSBA #35418
E-Mail: acl@mlrlegalteam.com
Janis C. Puracal, WSBA #39234
E-Mail: jcp@mlrlegalteam.com

8

9

Attorneys for Plaintiff Perienne de Jaray

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MALONEY | LAUERSDORF | REINER pc
ATTORNEYS AT LAW
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518
Facsimile: 503.245.1417