Andrew C. Lauersdorf, WSBA #35418
E-mail: acl@mlrlegalteam.com
Janis C. Puracal, WSBA #39234
E-mail: jcp@mlrlegalteam.com
MALONEY LAUERSDORF REINER, PC
1111 E. Burnside St., Ste. 300
Portland, OR 97214
Telephone: (503) 245-1518
Facsimile: (503) 245-1417

Attorneys for Plaintiff Perienne de Jaray

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| PERIENNE DE JARAY,<br><br>Plaintiff,<br><br>v.<br><br>ATTORNEY GENERAL OF CANADA FOR HER MAJESTY THE QUEEN, CANADIAN BORDER SERVICES AGENCY, GLOBAL AFFAIRS CANADA fka DEPARTMENT OF FOREIGN AFFAIRS AND INTERNATIONAL TRADE CANADA, GEORGE WEBB, KEVIN VARGA, and PATRICK LISKA,<br><br>Defendants. | No.: 2:16-cv-00571<br><br>DECLARATION OF PERIENNE DE JARAY IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |

I, Perienne de Jaray, declare as follows:

1.      I am the Plaintiff in this lawsuit.  I am over the age of 18 and have personal knowledge of the following facts.

2.      Attached at Exhibit 1 is a true and correct copy of an email from Nils Preshaw to Kevin Varga, which was disclosed in criminal proceedings against me.

3.      Attached at Exhibit 2 is a true and correct copy of a letter from the CBSA to the Department of Homeland Security, which was disclosed in criminal proceedings against me.

4.      Attached at Exhibit 3 is a true and correct copy of a Report of Interview of Bob

MALONEY | LAUERSDORF | REINER, PC
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518

1   Rodgers, which was disclosed in criminal proceedings against me.

2        5.     Attached at Exhibit 4 is a true and correct copy of a Report of Interview of Randy

3   Wood, which was disclosed in criminal proceedings against me.

4        6.     I was detained during every single U.S.-bound border crossing between 2009 and

5   2013. On every single one of these occasions, I was held in "secondary" inspection by United

6   States Customs and Border Protection ("USCBP"), and questioned about shipments from a

7   Canadian company, Apex Canada, my father, the investigation of my father by Canadian

8   authorities, my role in Apex Canada and my father's activities, and ultimately the criminal

9   charges falsely alleged against both my father and I. On every single one of these occasions my

10   passport was kept in the possession of the USCBP. On every single occasion when traveling by

11   vehicle, my vehicle was flanked by two armed USCBP officers in bullet proof vests as I was

12   moved from primary to secondary inspection. I was then escorted by the armed guard into the

13   building for interrogation. I specifically remember the U.S. officers taking calls during the

14   interrogations from people who the U.S. officers identified as Canadian agents and officers. I

15   also specifically remember the U.S. officers, after their calls with Canadian agents and officers,

16   asking more specific questions about alleged illegal shipments of goods, my purported ties to

17   China, and my involvement in the shipping of a package that was seized by the Canadian

18   government. Despite the fact that I was represented by an attorney at the time, I was not

19   permitted to talk to or consult with my attorney during any of these interrogations. I was

20   specifically told by the USCBP that I was not permitted to speak with an attorney, or anyone

21   else, despite my requests to speak with my attorney. I was threatened with imprisonment and

22   told that imprisonment in the United States would be the only way I would be entitled to legal

23   representation. I was harassed and threatened this way, despite the fact that my Canadian

24   attorneys had previously told the Canadian investigators not to contact me directly, and the

25   Canadian investigators had agreed not to. It was apparent to me that Canadian agents and

26   officers were using my U.S.-bound border crossings as a way to gain access to me, and to

Page 2–    DECLARATION OF PERIENNE DE JARAY

MALONEY | LAUERSDORF | REINER PC
1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518

1 | question me without my attorney present.  This tactic scared me, intimidated me, and caused me
2 | severe emotional and physical distress.  It later came to my attention that the Canadian agents
3 | and officers responsible for this tactic were aware of my innocence through this entire period of
4 | time, but manipulating the USCBP into detaining and interrogating me by misrepresenting my
5 | circumstances and providing the USCBP and other U.S. officials with falsified documents
6 | accusing me of complicity in international terrorism.

7 |       7.     In late 2009, I traveled to Canada and, upon my attempt to return to the United
8 | States, I was ordered to surrender my L1A Visa by a U.S. border guard at the Blaine,
9 | Washington, border crossing.  I was informed that I would not be admitted to the United States
10 | until I proved sufficient "ties and equities" to Canada.  I was not told what sufficient "ties and
11 | equities" were.  The border guards simply said that such things were arbitrarily determined on a
12 | case-by-case basis.  I was told that I might never be allowed to re-enter into the United States.  I
13 | was unable to return to the U.S., my home since 2001, and Bellingham, Washington, where I had
14 | purchased my first home in 2006.

15 |       8.     Prior to 2009, when I was forced out of the U.S., I did not have a single bank
16 | account, phone number, mailing address, or any other "tie" to Canada.  When I was forced to
17 | surrender my L1A Visa, the U.S. border officials were aware that I was a resident of the U.S. and
18 | that all of my "ties and equities" were to the U.S.  I understand that "ties and equities" is the way
19 | in which border officials define and describe a person's property, residence, bank accounts,
20 | investments, phone numbers, utilities, etc., and all things that they use to establish where the
21 | person in question is "actually" residing.  All of my "ties and equities" were American, to the
22 | U.S.  When I was forced to surrender my Visa, effective that moment, I was no longer permitted
23 | to live in the U.S., and effectively deported.  Before I was allowed to return to the U.S., as a
24 | visitor, vacationer, or anything else, I was told by the U.S. officials that I had to establish "ties
25 | and equities" to Canada, to prove to them (in the U.S.) that I was not sneaking into the U.S. to
26 | live there illegally, which they expressed is a risk after someone has been residing in the U.S. for

MALONEY | LAUERSDORF | REINER rc

1111 E. Burnside Street, Ste. 300
Portland, Oregon 97214
Telephone: 503.245.1518

1 | such an extensive amount of time—in my case, just short of a decade. I was refused entry to the
2 | U.S. in December of 2009, and escorted by border officials back to Canada as the U.S.
3 | determined I did not have enough ties and equity in Canada. It took some time for me to
4 | establish this as I had to open Canadian bank accounts, move into my mom's house temporarily,
5 | organize shipments of my furniture to Canada, get a Canadian phone number, open up utility
6 | accounts in my name, and put down deposits as I had no credit history in Canada due to the fact
7 | that I had never resided in Canada as an adult.

8 |        9.      In August of 2013, I was told by my attorney that the FBI had issued a warrant for
9 | my arrest and that my name had been placed on the Interpol list. I was terrified that the FBI had
10 | issued a warrant against me, an innocent person. The warrant was issued around the same time
11 | that settlement discussions were happening in my father's civil case against the Government of
12 | Canada. I understood that the FBI was looking for me and would take me into custody if I
13 | attempted to return to the United States. I was told that if I was to even enter U.S. airspace on
14 | route to another country, my plane would be grounded, and I would be taken into custody and
15 | held indefinitely. During this time, in 2013, the Canadian investigators did not inform the FBI
16 | that charges had been dropped, and that liability for negligence had been admitted by the
17 | Government of Canada, or that Canadian agents and officials had manipulated the FBI and
18 | USCBP into a false investigation of me based on fabricated documents. They were entirely
19 | aware of my innocence and continued to hide that from FBI investigators.

20 |        10.     Before I contacted my current attorneys in the United States, I made an informal
21 | inquiry against the Government of Canada to settle the harm they caused me, and to make it right
22 | as they had already admitted liability for negligence in my father's civil case. The Government
23 | of Canada, in response, told my Canadian attorney that it would not consider my inquiry in
24 | settling my damages in a Canadian court because the statute of limitations had passed in Canada.
25 |
26 |

Page 4—   DECLARATION OF PERIENNE DE JARAY

MALONEY | LAUERSDORF | REINER pc
1111 E. Burnside Street, Ste. 300
Portland, Oregon  97214
Telephone: 503.245.1518

1    I declare under penalty of perjury under the laws of the United States that the foregoing is

2  true and correct to the best of my knowledge, information, and belief.

3    Dated this ___17th___ day of ___October___, 2016.

4

5                                         By _____

6                                            Perienne de Jaray

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 5–    DECLARATION OF PERIENNE DE JARAY