1   David R. West, WSBA #13680
    Donald B. Scaramastra, WSBA #21416
2   Victoria M. Slade, WSBA #44597
    Mark B. Feldman, Of Counsel
3   GARVEY SCHUBERT BARER
    1191 Second Ave., 18th Floor
4   Seattle, WA  98101
    Phone: (206) 464-3939
5   Fax: (206) 464-0125
    Attorneys for Defendants

6

7

8                   UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
9                            AT SEATTLE

10

11  PERIENNE DE JARAY,                      NO. 2:16-cv-00571-RSM

12              Plaintiff,                   **REPLY IN SUPPORT OF
                                             DEFENDANTS' MOTION TO
13       v.                                  DISMISS COMPLAINT**

14  ATTORNEY GENERAL OF CANADA              Noted on motion calendar:
    FOR HER MAJESTY THE QUEEN,              Friday, October 21, 2016
15  CANADIAN BORDER SERVICES                (pursuant to Dkt. 14)
    AGENCY, GLOBAL AFFAIRS CANADA
16  fka DEPARTMENT OF FOREIGN
    AFFAIRS AND INTERNATIONAL
17  TRADE CANADA, GEORGE WEBB,
    KEVIN VARGA, and PATRICK LISKA,

18              Defendants.

19

20

21

22

23

24

25

26  REPLY IN SUPPORT OF DEFENDANTS'
    MOTION TO DISMISS COMPLAINT
    NO. 2:16-CV-00571-RSM

Chief Judge Ricardo Martinez

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1    Plaintiff has not established that this Court has jurisdiction over any of the defendants,

2    or that this Court should retain this matter.   This case should be dismissed.

3    **I.      The Pleading Standards to Be Applied and the Evidence to Be Considered.**

4    Preliminarily, plaintiff has misidentified the standard to be applied to these motions.

5    The applicable standard was established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

6    (2007), and refined in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), as follows:

7    To survive a motion to dismiss, a complaint must contain sufficient factual matter,
     accepted as true, to "state a claim to relief that is plausible on its face."  A claim has
8    facial plausibility when the plaintiff pleads factual content that allows the court to draw
     the reasonable inference that the defendant is liable for the misconduct alleged.  The
9    plausibility standard is not akin to a "probability requirement," but it asks for more than
     a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads
10   facts that are "merely consistent with" a defendant's liability, it "stops short of the line
     between possibility and plausibility of 'entitlement to relief.'"
11

12   *Iqbal*, 556 U.S. at 678.    The *Iqbal* Court explained that these rules were supported by two

13   "working principles."  *Id.*  First, "the tenet that a court must accept as true all of the allegations

14   contained in a complaint is inapplicable to legal conclusions."   *Id.*   Thus, for example, the

15   mere "assertion of an unlawful agreement" in an antitrust matter is a legal conclusion, and thus

16   "not entitled to the assumption of truth."[1]  Second, "only a complaint that states a plausible

17   claim for relief survives a motion to dismiss."[2]   A claim must be supported by specific facts[3]

18   that "nudge[] [the] claims" "across the line from conceivable to plausible."[4]

19   Several of plaintiff's allegations are conclusory, and are not entitled to any presumption

20   of truth.  Also, elements of her claims are entirely implausible without factual support.

21   Plaintiff has also improperly submitted evidentiary materials that cannot be considered

22
     _____

23   [1] *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 555).
     [2] *Iqbal*, 556 U.S. at 679.

24   [3] The *Iqbal* Court found the following assertions to be too conclusory:  (1) that two high level officials "knew of,
     condoned, and willfully and maliciously agreed to subject" the plaintiff to egregious conditions of confinement "as
25   a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological
     interest;" (2) that one official was "the principal architect" of the discriminatory policy, and (3) that another
26   official was "instrumental" in accepting and implementing it.  *Iqbal*, 556 U.S. at 680-681.
     [4] *Iqbal*, 556 U.S. at 680.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 1
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

here.  In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the

complaint and documents attached thereto.[5]  The only materials the court may consider are

"documents attached to the complaint, documents incorporated by reference in the complaint,

[and] matters of judicial notice."[6]  The court "typically cannot consider evidence beyond the

four corners of the complaint. . . ."[7]  Defendants thus object to consideration of materials

outside the complaint, including the declarations filed at Dkt. 32 through 36, inclusive.

## II.    The FSIA Issues

### A.    Plaintiff Bears the Burden of Offering Facts Establishing Jurisdiction.

Plaintiff misidentifies the burden she bears on this motion:

> Section 1604 [of FSIA] creates a "statutory presumption that a foreign state is immune
> from suit."  To trigger this presumption, the defendant must make a prima facie case
> that it is a foreign state.  The presumption also applies if it is apparent from the
> pleadings or uncontested that the defendant is a foreign state, as in this case. . . . Once
> the court has determined that the defendant is a foreign state, "the burden of production
> shifts to the plaintiff to offer evidence that an exception applies."  If the plaintiff
> satisfies her burden of production, jurisdiction exists unless the defendant demonstrates
> by a preponderance of the evidence that the claimed exception does not apply.

*Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1124-1125 (9th Cir. 2010) (internal

citations omitted, emphasis added).  "[FSIA's] burden-shifting scheme . . . puts most of the

weight on the plaintiff" in part because "federal jurisdiction does not exist unless one of the

exceptions to immunity from suit applies."  *Id.*, at 1125.

Here, as in *Peterson*, it is uncontested that the entity defendants are foreign states under

FSIA, and there is a "statutory presumption" that defendants are immune from suit.  Plaintiff

thus must offer specific facts to establish that a FSIA exception applies.  She has not done so.

### B.    The Commercial Exception to FSIA Does Not Apply Here.

Plaintiff argues that her claims fall within FSIA's "commercial exception," which

---

[5] *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).
[6] *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).
[7] *Hummel v. Nw. Tr. Servs., Inc.*, No. C15-255RAJ, 2016 WL 3093255, at *2 (W.D. Wash. Mar. 23, 2016).

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 2
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

1   provides that a foreign state is not immune from suit in cases involving actions "based upon" or

2   "in connection with" a commercial activity of a foreign state.  28 U.S.C. § 1605(a)(2).

3   Plaintiff has not alleged any commercial activity that is arguably adequate to carry her burden

4   under FSIA.  Plaintiff's complaint is based on defendants' "harassing and intimidating [her]

5   and her employees and customers,"[8] and defendants' investigation of plaintiff and her company

6   and use of U.S. law enforcement in that effort.[9]  Investigating potential crimes, contacting

7   witnesses, and prosecuting offenders are not commercial acts, but "emanate from the power

8   inherent in sovereignty."[10]   Further, FSIA provides that the actionable "commercial activity"

9   must be the specific course of conduct or act at issue in the case, and not the <u>purpose</u> of the act

10  or conduct.  28 U.S.C. § 1603(d).  Plaintiff's sole argument is that defendants acted "in order to

11  win favor with the U.S. and secure the defense contracts."  This is statutorily irrelevant "motive

12  or purpose" underlying the acts, and not any actual commercial activity of any sort.

13         C.       <u>Defendants Have Not Waived Their FSIA Immunity</u>.

14         Plaintiff next argues that defendants impliedly waived their immunity under one of two

15  treaties,[11] but there is no treaty-based waiver here factually or legally.  "The FSIA's waiver

16  exception is 'narrowly construed.'"[12]  When considering whether a sovereign has waived its

17  FSIA immunity, "the essential inquiry  . . . is whether a sovereign contemplated the

18  involvement of United States courts in the affair at issue."[13]  Illustrative is *Argentine Republic*

19  *v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989), where two Liberian companies sued the

20  Argentine Republic for bombing their vessel during the Falkland Islands conflict.  Like plaintiff

21  _____

    [8] Opp., p. 15.
    [9] Opp., p. 15.

22  [10] *BP Chemicals Ltd. v. Jiangsui Sopo Corp.*, 285 F.3d 677, 681 (8th Cir. 2002).  *See also Saudi Arabia v. Nelson*,
    507 U.S. 349, 361-62 (1993) ("a foreign state's exercise of the power of its police has long been understood . . . as

23  peculiarly sovereign in nature. . . . Exercise of the powers of police and penal officers is not the sort of action by
    which private parties can engage in commerce.").

24  [11] The Inter-American Convention Against Terrorism, June 3, 2002, 42 I.L.M. 19 ("IACT"), and the Treaty
    Between the Government of Canada and the United States of America on Mutual Legal Assistance in Criminal

25  Matters, March 18, 1985, C.T.S. 1990 No. 19 ("MLAT").
    [12] *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 720 (9th Cir. 1992).

26  [13] *Id.* at 721.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 3
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1   here, the companies argued that two international conventions waived the Argentine

2   government's immunity under 28 U.S.C. § 1605(a)(1).  The Court rejected that argument

3   because neither convention mentioned a waiver of immunity or any cause of action in the U.S.:

4       Nor do we see how a foreign state can waive its immunity under §1605(a)(1) by signing
        an international agreement that contains no mention of a waiver of immunity to suit in

5       United States courts or even the availability of a cause of action in the United States.

6   488 U.S. at 442-443.[14]

7       Here, plaintiff argues the purported "waiver" is in the IACT's provision that "fair

8   treatment" includes "conformity with the law of the state in the territory of which that person is

9   present."   IACT contains no mention of any country waiving its immunity to suit; no mention

10  of any cause of action in the U.S.; and no reference to any involvement of U.S. courts.  Plaintiff

11  has not facially meet the applicable test for treaty waiver.  And IACT is irrelevant given the

12  lack of any specific allegation that IACT was actually involved in the investigation.

13      Even if IACT were relevant, when properly interpreted, IACT contemplates that FSIA

14  is part of U.S. law applicable here.  Plaintiffs in *Amerada Hess* argued that a FSIA waiver was

15  created by a treaty between Liberia and the U.S. which provided plaintiffs "with freedom of

16  access to the courts of justice of the other conforming to the local laws."  *Amerada Hess*, 488

17  U.S. at 443.  The Supreme Court interpreted that language not to create a FSIA waiver, but

18  instead to confirm that FSIA remains applicable to cases in U.S. courts invoking the treaty:

19      Article I of [the Treaty of Friendship, Commerce and Navigation between the U.S. and
        Liberia] provides, in pertinent part, that the nationals of the United States and Liberia

20      "shall enjoy freedom of access to the courts of justice of the other on conforming to the

21      local laws." The FSIA is clearly one of the "local laws" to which respondents must
        "conform" before bringing suit in United States courts.

22

23

[14] Many courts have reached the same conclusion regarding other treaties.  *See, e.g., Frolova v. Union of Soviet
Socialist Republics*, 761 F.2d 370, 377–78 (7th Cir. 1985) (Soviet Union did not waive immunity by signing
United Nations Charter and Helsinki Accords); *Anderman v. Fed. Republic of Austria*, 256 F. Supp. 2d 1098, 1106
(C.D. Cal. 2003) (Austria did not waive immunity in State Treaty for Re–Establishment of an Independent and
Democratic Austria); *Greenpeace, Inc. (U.S.A.) v. State of France*, 946 F. Supp. 773, 781 (C.D. Cal. 1996) (France
did not waive immunity under United Nations Convention on the Law of the Sea).

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 4
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

1   *Id.*  Here, IACT uses the same wording – "conformity with" the laws of the United States  –

2   when describing the obligations of contracting states.  Thus, in any IACT-related case, U.S.

3   courts are required to apply FSIA to act in "conformity with the law of the state in the territory

4   of which that person is present."

5        The only case cited by plaintiff establishing any type of waiver is *Siderman*.[15]  That is

6   not a treaty case, but arose from the government of Argentina invoking the assistance of U.S.

7   courts (via letters rogatory) to serve papers on the plaintiff.[16]   In *Blaxland v. Commonwealth*

8   *Dir. of Pub. Prosecutions*, the Ninth Circuit limited *Siderman* to situations in which foreign

9   sovereigns use domestic U.S. courts and thereby subject themselves to the jurisdiction of the

10  U.S. legal system.[17]  The *Blaxland* court did not find any waiver where the Australian

11  government had requested and obtained extradition of the plaintiff, because extradition was

12  conducted by the executive branch of government, and not the courts.[18]  Plaintiff has not

13  identified any specific facts showing action by the judicial branch that could create a waiver by

14  Canada.  Indeed, she concedes that it is "unknown" if U.S. courts were involved in this

15  matter.[19]  This does not meet her pleading burden to show specific facts establishing waiver.[20]

16        D.       The Discretionary Conduct Exemption Bars this Matter.

17        Plaintiff argues that the actions of Canadian law enforcement personnel to investigate

18  and prosecute a crime do not involve any element of judgment or choice.    She is incorrect.

19        First, citing a number of FTCA cases, plaintiff asserts that acts that "violate the law" are

20  _____

21  [15] *Siderman*, 965 F.2d 699.
    [16] Plaintiff claims a waiver "may have" occurred under MLAT, Opp., p. 13, but she is several steps removed from
22  showing that Canada waived its immunity by involving a U.S. court under MLAT.   First, plaintiff has no specific
    evidence of any request for assistance under that treaty.   Plaintiff says she "has evidence" that Canadian officials
23  "made a request" under MLAT, but the document she cites actually indicates the opposite – that no request was
    made under the treaty.  See De Jaray Decl., Ex. 1 (Dkt.33-1) (stating that company at issue – "Lattice" – "was
24  asked voluntarily to provide documents and they did.").   Second, even if MLAT assistance was requested, there is
    no proof of any involvement of any Court in aid of that request.   Plaintiff relies on speculation, not plausibility.
    [17] 323 F.3d 1198, 1206 (9th Cir. 2003).
25  [18] *Id.* at 1206-08.
    [19] Opp., p. 13.
26  [20] Plaintiff also cites cases involving contract-based waivers, but identifies no relevant contract.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 5
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1    "outside" the discretionary conduct exemption,[21] and claims that the acts of Canadian

2    representatives were crimes under U.S. federal and Washington state law.[22]  This argument was

3    rejected in *Risk v. Halvorsen*, 936 F.2d 393 (9th Cir. 1991).   The plaintiff in that case argued

4    that the Norwegian defendants committed crimes under California law, and thus could not

5    invoke the discretionary function exception.  The Ninth Circuit disagreed:

6        In this case, the most that can be said is that Norwegian officials issued travel
         documents to a Norwegian citizen and her children, also citizens of Norway; that they
7        provided funds for her travel; and that they protected her from contact by her former
         husband.  Although these acts may constitute a crime under California law, it cannot be
8        said that every conceivably illegal act is outside the scope of the discretionary function
9        exception.

10       The district court correctly held that the discretionary function exception to the FSIA
         applies in this case and that it has no jurisdiction to hear the claims against Norway.
11

12   936 F.2d at 396-97 (internal citation omitted).   Plaintiff cites no FSIA case in which the

13   discretionary function exception was denied because of alleged illegality under local law of the

14   actions of the sovereign involved.

15       Plaintiff next argues that the actions of Canadian actors were not discretionary because

16   of an alleged "mandate" to "take aggressive action" and an alleged "directive" to "shut down"

17   plaintiff's company.   Plaintiff's position is that as a result, each of the actions taken here –

18   everything said in each interview, every element of any contact with an employee or witness or

19   customer – involved no element of choice, judgment, or discretion.   But plaintiff pleads no

20   specific facts that prove that government actor were "required" to act as they did, and it is

21   implausible to assume they were.  The analysis of the Ninth Circuit in *In re Glacier Bay* is

22   instructive as to the type of proof that is required.[23]   Similarly, in *O'Bryan v. Holy See*, 471 F.

23   Supp.2d 784, 794-94 (W.D. Ky. 2007), the plaintiffs alleged the defendant had a policy

---

[21] Opp., pp. 5-6.
[22] Opp., p. 6, notes 25, 26, and 27 (citing various USC and RCW criminal provisions).
[23] 71 F.3d 1447 (9th Cir. 1995).  The Court there examined numerous NOAA manuals and instructions,
distinguishing those which created mandatory processes (and used the term "shall") from those which provided
discretion (using "should").  Plaintiff has no such evidence to judge the discretion of defendants.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 6
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

1   specifically proscribing any warnings to parishioners of suspected pedophiles, as well as a

2   policy forbidding reporting of suspected abuse to appropriate authorities.   Such mandatory,

3   specific policies removed any discretion from those who followed them.   Plaintiff offers no

4   specific allegation plausibly establishing any such mandatory, specific policy here.

5       E.   The Misrepresentation/Deceit, Malicious Prosecution, and Abuse of Process
            Exemption Each Bar this Action.

6       Plaintiff also largely ignores FSIA cases in considering the exemption provided by

7   § 1605(a)(5)(B), instead citing exclusively FTCA cases.   That exemption eliminates

8   jurisdiction over any claims "arising out of malicious prosecution, abuse of process, libel,

9   slander, misrepresentation, deceit, or interference with contract rights."   In evaluating

10  plaintiff's claims, this Court should ignore efforts to "plead around the proviso" and should

11  "look beyond [the complaint's] characterization to the conduct on which the claim is based."[24]

12      Every aspect of the Complaint states claims that "arise from" malicious prosecution,

13  abuse of process, libel, slander, misrepresentation, and/or deceit.  The Complaint alleges that

14  Canadian officials supposedly falsified facts about the Seized Goods (deceit and

15  misrepresentation); used that falsified information to conduct a criminal investigation (deceit

16  and malicious prosecution); misled U.S. officials about the facts, thereby inducing them to

17  participate in the investigation (deceit and misrepresentation); improperly indicted plaintiff

18  (malicious prosecution) based on the same falsehood (deceit and misrepresentation); publicized

19  the indictment, harming plaintiff's reputation (slander); threatened interviewees with criminal

20  charges if they did not cooperate (abuse of process); and misled her company's customers,

21  banks and employees by linking her to "terrorism" or "terroristic activity" and "arms dealing"

22  (deceit and misrepresentation).

23      Plaintiff halfheartedly attempts to recast her claims, but repeatedly admits that her

24  claims all rest on the alleged deceit of the defendants.  She tries to describe her claims as being

25

26  [24] *Blaxland*, 323 F.3d at 1203.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 7
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1   based on "harassment and intimidation in the U.S.," but acknowledges this was achieved by

2   "unlawful manipulation of U.S. authorities and intimidation of witnesses and Plaintiff on U.S.

3   soil" by means of false suggestions to "witnesses in the United States" that "Plaintiff was

4   involved in arms dealing and counter-proliferation [sic]."[25]   The coda to her own description of

5   her claim is that "[a]ll the while, the information provided by Defendants to the FBI and U.S.

6   authorities was false, and the Defendants knew it was false."[26]  All four of plaintiff's causes of

7   action specifically rely on allegations of "falsified" or "false" information.[27]  This is quite

8   simply a case "arising from" alleged misrepresentation and deceit.

9       This case is on all fours with *Blaxland*, and plaintiff's failure to address that case in any

10   detail is telling.  Blaxland's complaint was that Australian officials "made false or misleading

11   statements in affidavits submitted by the U.S. Attorney to secure Blaxland's arrest and

12   extradition," all in an attempt to claim a political victory.  *Blaxland*, 323 F.3d at 1202.  The

13   Ninth Circuit dismissed not only Blaxland's claims for malicious prosecution and abuse of

14   process, but also his claims for intentional infliction of emotional distress and false

15   imprisonment because they "arose from" those same activities.  *Id.* at 1203.  Here, plaintiff's

16   complaint is for the same types of false statements.

17   **III.   There Is No Jurisdiction Over the Individual Defendants.**

18       A.   <u>The Individual Defendants are Immune for Their Official Acts</u>.

19       Plaintiff addresses the dispositive issue of official acts immunity in two paragraphs,[28]

20   and supports that opposition with no facts.  She essentially concedes the motion.

21       First, plaintiff baldly asserts "there is a question of fact" as to whether the individual

22   defendants were "acting outside their authority."  But plaintiff does not even support that

23   assertion with any citation to her complaint, in which she has not alleged any specific instance

24
[25] Opp., p. 22.

25   [26] *Id.*
[27] Complaint, ¶¶ 147 ("falsified" and "false" information); 154 (same); 161 (same); 168 (same).

26   [28] Opp., pp. 18-19.

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

1    or manner in which any of the individual defendants acted outside their official capacity.

2    Indeed, her position is entirely incompatible with her allegations that the defendants acted to

3    implement mandatory government policies and to achieve governmental goals.

4         Secondly, plaintiff argues that official acts immunity does not apply to violations of *jus*

5    *cogens*. *Jus cogens* norms are certain fundamental, overriding principles of international law,

6    from which no derogation is permitted.[29]  "Torture and summary executions are considered

7    violations of *jus cogens* norms."[30]  The Ninth Circuit has not adopted a *jus cogens* exception to

8    the official acts immunity doctrine, and the Second Circuit,[31] courts in this Circuit,[32] and the

9    U.S. Executive[33] have all rejected any such exception.[34]  But this Court need not decide the

10   issue, because plaintiff has not even argued that she has alleged adequate facts to support a *jus*

11   *cogens* violation, stating only that defendants "acted in violation of international law."[35]

12   Without facts or law to support the exception, it is simply not even potentially applicable here.

13       B.    There is No Viable ATS Claim.

14        Plaintiff limits her ATS claim to a claimed right to "safe conduct," which she first

---

[29] "A *jus cogens* norm, also known as a 'peremptory norm of general international law,' can be defined as 'a norm accepted and recognized by the international community of States as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character.'" *Yousuf v. Samantar*, 699 F.3d 763, 775 (4th Cir. 2012).

[30] *Dogan v. Barak*, No. 215CV08130ODWGSJX, 2016 WL 6024416 (C.D. Cal. Oct. 13, 2016), at *10, n. 18.

[31] *Matar v. Dichter*, 563 F.3d 9, 15 (2d Cir. 2009).

[32] Last week, Judge Wright of the Central District of California dismissed a lawsuit based on the common law official immunity of Ehud Barak, the former Israeli Defense Minister and Prime Minister, who was sued on claims arising from Israeli military forces' use of lethal force against an American citizen aboard a vessel attempting to deliver humanitarian assistance and supplies to Gaza. *Dogan*, 2016 WL 6024416.  Judge Wright rejected the argument that there was a *jus cogens* exception to the official immunity rule, noting that such an exception "would effectively eviscerate the immunity for *all* foreign officials. The question whether there was actually a *jus cogens* violation is inextricably intertwined with the merits of the underlying claim; thus, having a *jus cogens* exception would merge the merits inquiry with the immunity inquiry. . . . There w[ould] effectively be no immunity."  *Id.* at *10.  Further, because the U.S. government has "made clear it does not recognize a *jus cogens* exception to immunity," and "[b]ecause the common law immunity inquiry centers on what conduct the *Executive* has seen fit to immunize, [*Republic of Mexico v.*] *Hoffman*, 324 U.S. [30] at 36 [(1945)], courts are not free to carve out such an exception on their own."  *Id.*

[33] *Dogan*, at *10.

[34] The Fourth Circuit recognized the exception in a case alleging torture, where the defendant was "a former official of a state with no currently recognized government to request immunity on his behalf or to take a position on whether the acts in question were taken in an official capacity." *Yousuf*, 699 F.3d at 777.

[35] Opp., p. 19.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 9
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206  464  3939*

asserts arises due to her "[m]ere lawful presence" as an alien in the U.S.[36]  That proposition is inconsistent with any judicial understanding of the international law of safe conduct or the breadth of the ATS.  *Sosa v. Alvarez-Machain* cautions that courts are to consider "practical consequences" when determining whether to recognize a cause of action under the ATS,[37] and to use "great caution in adapting the law of nations to private rights."[38]  If an alien could sue under the ATS for any type of interference with the alien's presence in the U.S., the federal courts would be flooded with claims of alleged violations by public and private defendants.

Plaintiff next relies on *Tavaras v. Taveraz*, a Sixth Circuit case in which the plaintiff attempted to state an ATS claim based on his ex-wife's allegedly fraudulent act of entering the U.S. under a visitor's visa when she intended to permanently immigrate.[39]  The Sixth Circuit found no ATS jurisdiction, because nothing tied the wrongful conduct to any "direct violation of the law of nations."  In *dicta*, the Sixth Circuit laid out portions of the description of safe conducts contained in William Blackstone's 18th century *Commentaries*.  In doing so, the *Tavaras* Court did not consider current customary international law, nor did it assess how the *Sosa* criteria would apply to an ATS claim based on modern visa practice.

Under *Sosa*, any ATS claim must be based on "a <u>contemporary</u> international legal norm [which] is 'specific, universal, and obligatory.'"[40]  *Sosa* emphasized:

> "The prevailing conception of the common law has changed since 1789 in a way that counsels restraint in judicially applying internationally generated norms."[41]

> "A decision to create a private right of action is one better left to legislative judgment in the great majority of cases."[42]

> "We have no congressional mandate to seek out and define new and debatable

---

[36] Opp., p. 16. Plaintiff cites *Johnson v. Eisentrager*, 339 U.S. 763 (1950), which did not involve international law principles, U.S. visas, or the ATS, but instead ruled that enemy aliens prosecuted abroad for war crimes did not have habeas rights.
[37] *Sosa v. Alvarez-Machain,* 542 U.S. 692, 732 (2004).
[38] *Sosa*, 542 U.S. at 728.
[39] 477 F.3d 767, 772 (6th Cir. 2007).
[40] *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1019 (9th Cir. 2014) (citing *Sosa*, 542 U.S. at 732) (emphasis added).
[41] *Sosa*, 542 U.S. at 725.
[42] *Id.* at 727.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 10
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
e i g h t e e n t h   f l o o r
1 1 9 1   s e c o n d   a v e n u e
s e a t t l e ,   w a s h i n g t o n   9 8 1 0 1 - 2 9 3 9
2 0 6   4 6 4   3 9 3 9

1    violations of the law of nations. . . ."[43]

2  As defendants described in their Motion to Dismiss, there is no proof of any 21st century

3  consensus among nations that visas constitute safe conducts; that rights and duties relating to

4  visas are defined in any universal fashion under international law; or which actions interfering

5  with visa rights violate international law.  *Sosa* requires definite agreement and universal

6  acceptance of the international community on these points before any claim lies under the ATS.

7        And factually, just in *Tavaras*, plaintiff does not link up her lost visa to any act of

8  defendants.  She never provides any specific fact that establishes it is plausible, rather than

9  possible, that she lost her L1A visa due to actions of the defendants.   Her allegations are

10  entirely conclusory in that regard, and are of the type the Court rejected in *Iqbal*.

11  **IV.    Act of State**

12        The Act of State doctrine is a mandatory rule of law that bars adjudication of this case.

13  The focus of the doctrine is avoiding judicial inquiry into the acts and conduct of foreign

14  officials, even where those acts have strong, direct effects in the U.S.  Thus, the Act of State

15  doctrine has been invoked to dismiss a claim involving shipments between Columbia and the

16  United States when such shipments were regulated by Columbian law;[44] and to dismiss claims

17  against vitamin suppliers who fixed prices in the U.S. because of direction by Chinese

18  officials.[45]  Plaintiff's claims would require this Court to review the validity of official acts of

19  the Canadian Government performed within its territory, including the conduct and underlying

20  motives of Canadian officials relating to the enforcement of Canadian export control rules.

21  There is no rule, and plaintiff cites no authority, that any alleged Canadian activity in the

22  United States bars application of the act of state doctrine.   Here, plaintiff does not dispute that

23  any resolution of her claims would necessarily involve forbidden judicial inquiry into the acts

24

25  [43] *Id.* at 728.
   [44] *O.N.E. Shipping Ltd. v. Flota Mercante Grancolumbia, S.A.*, 830 F.2d 449, 450 (2d Cir. 1987).
26  [45] *In re Vitamin C Antitrust Litigation*, No. 13-4791-cv, 2016 WL 5017312, *11 (2d Cir. Sept. 20, 2016).

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 11
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

1  and conduct of officials of a foreign state, its affairs and policies in Canada, and the underlying

2  reasons and motivations for the actions of the foreign government.

3  **V.     Comity**

4       Plaintiff agrees that *Mujica v. Airscan, Inc.*[46] identifies the Ninth Circuit requirements

5  for application of international comity.  Under *Mujica*, the Court balances seven factors, both in

6  cases of adjudicatory and prescriptive comity. The adequacy of the foreign forum is only one of

7  seven factors. No pending case or future remedy in Canada is required. In *Mujica*, it was agreed

8  that Columbian law precluded recovery against the defendants, but the state claims were

9  dismissed because the balance of factors supported the application of comity.  Plaintiff does not

10  acknowledge the alleged activity of defendants which largely occurred abroad (the first *Mujica*

11  factor); the Canadian citizenship of all the parties (the second *Mujica* factor); the nature of the

12  conduct as involving "core prerogatives of the sovereign" (the third *Mujica* factor); the foreign

13  policy interests of the U.S. (the fourth *Mujica* factor); U.S. public policy interests (the fifth

14  *Mujica* factor – none identified by plaintiff); and that "[f]oreign states, no less than the United

15  States, have legitimate interests in regulating conduct that occurs within their borders, involves

16  their nationals, impacts their public and foreign policies, and implicates universal norms" (the

17  sixth *Mujica* factor).  All of these factors weigh toward application of adjudicative comity in

18  this matter.

19  **VI.    Forum non conveniens**

20       Defendants withdraw their motion to dismiss based on forum non conveniens.

21  **VII.   Conclusion**

22       Plaintiff has not carried her the burden of establishing jurisdiction in this matter.   There

23  is no FSIA or ATS jurisdiction, and the individual defendants are immune for their official acts.

24  Defendants request dismissal of this action.

25

26  [46] 771 F.3d 580 (9th Cir. 2014).

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 12
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1

DATED this 21st day of October, 2016.

2

GARVEY SCHUBERT BARER

3

4

By  /s/David R. West

David R. West, WSBA #13680

5

Donald B. Scaramastra, WSBA #21416

Victoria Slade, WSBA #44597

6

Garvey Schubert Barer

1191 Second Avenue, Suite 1800

7

Seattle, WA 98101

(206) 464-3939

8

Of Counsel:  Mark B. Feldman (not

admitted in Washington)

9

10

Attorneys for Defendants Attorney

General of Canada for Her Majesty

11

The Queen, Canadian Border Services

Agency, Global Affairs Canada,

12

George Webb, Kevin Varga, and

Patrick Liska

13

14

15

16

17

18

19

20

21

22

23

24

25

26

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that on October 21, 2016, I electronically filed the REPLY IN

3    SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT on behalf of

4    Defendants Attorney General of Canada for Her Majesty The Queen, Canadian Border Services

5    Agency, Global Affairs Canada fka Department of Foreign Affairs and International Trade

6    Canada, George Webb, Kevin Varga, and Patrick Liska with the Clerk of the Court using the

7    CM/ECF system, which will send notification of such filing to:

8
9
    Andrew C. Lauersdorf
    Janis C. Puracal
    MALONEY LAUERSDORF REINER, PC
10    1111 E. Burnside Street, Suite 300
    Portland, Oregon 97214
11    Telephone: 503-245-1518
    Facsimile: 503-245-1417
12    acl@mlrlegalteam.com
    jcp@mlrlegalteam.com
13    *Attorneys for Plaintiff Perienne de Jaray*

14    DATED this 21st day of October, 2016.

15                              GARVEY SCHUBERT BARER

16
17    By  */s/David R. West*
                              David R. West, WSBA #13680
18                              Garvey Schubert Barer
                              1191 Second Avenue, Suite 1800
19                              Seattle, WA 98101
                              (206) 464-3939
20                              drwest@gsblaw.com

21

22

23

24

25    GSB:8147014.5

26

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT - 14
NO. 2:16-CV-00571-RSM

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464 3939