UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PERIENNE DE JARAY,<br><br>              Plaintiff,<br><br>       v.<br><br>ATTORNEY GENERAL OF CANADA FOR HER MAJESTY THE QUEEN, CANADIAN BORDER SERVICES AGENCY, GLOBAL AFFAIRS CANADA fka DEPARTMENT OF FOREIGN AFFAIRS AND INTERNATIONAL TRADE CANADA, GEORGE WEBB, KEVIN VARGA, and PATRICK LISKA,<br><br>              Defendants. | Case No. C16-571 RSM<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR LEAVE |

## I.     INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss under Rules 12(b)(6), 12(b)(1), and 12(b)(3) (Dkt. #22) and Plaintiff's Motion for Leave to Seek Discovery, (Dkt. #26). The Court has determined that oral argument is unnecessary. For the reasons stated below, the Court GRANTS Defendants' Motion, DENIES Plaintiff's Motion, and dismisses this case.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR LEAVE - 1

## II.   BACKGROUND

### A. Procedural Background

Plaintiff filed this action on April 19, 2016, alleging claims under the Alien Tort Statute against George Webb, Kevin Varga, and Patrick Liska ("the individual Defendants"), and against the Attorney General of Canada, Canadian Border Services Agency, and Global Affairs Canada/Department of Foreign Affairs and International Trade ("Government of Canada") under theories of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.  Dkt. #1.  Plaintiff served Defendants under Rule 4(f) "by complying with an international treaty, the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters."  Dkt. #15 at 2.  Defendants did not immediately file responsive pleadings, however the parties stipulated to an extension allowing Defendants to answer the complaint or file Rule 12 motions by September 29, 2016, with motions noted for consideration on October 21, 2016.  *Id*; *see also* Dkt. #14.  On August 11, 2016, Plaintiff filed a motion to begin discovery in the interim.  *See* Dkt. #15 at 3.  On August 26, 2016, the Court denied Plaintiff's request, noting that "Plaintiff has failed to make a showing that discovery is needed to respond to the as-yet-unfiled Rule 12 motions, but Plaintiff may move at a later date to request that discovery and an extension of the deadline to respond to the Rule 12 motions."  Dkt. #21 at 3.  On September 29, 2016, Defendants filed this Motion to Dismiss for failure to state a claim upon which relief can be granted, lack of subject-matter jurisdiction, and improper venue.  Dkt. #22.  Plaintiff filed a Motion for Leave to Seek Discovery on October 13, 2016.  Dkt. #26.

### B. Factual Background[1]

In 2009, Plaintiff Perienne de Jaray was Executive Vice President at Apex USA, a Washington-based corporation and wholly owned subsidiary of Apex Canada. Ms. de Jaray also ran a subsidiary called Caliber Component Solutions ("Caliber"). Ms. de Jaray had an interest in Apex Canada and Apex USA (collectively, "Apex"). At the time, Ms. de Jaray was living in Bellingham, Washington.

Apex Canada provided advanced electronics manufacturing services ("EMS") to other companies. Apex also provided additional services including product engineering and design, supply chain management, global distribution, and repair services. Caliber was created as a subsidiary of Apex to procure and dispose of excess inventory and to trade in the secondary electronic components market.

In December 2008, Apex Canada put together a shipment of circuit board assemblies and components to send to Caliber in Kowloon, Hong Kong. The components were to be assembled under contract at the Caliber facility in Hong Kong and shipped back to Canada for final manufacturing and, ultimately, the end customers of Apex Canada. On December 19, 2008, Federal Express ("FedEx") retrieved the two packages from Apex Canada for shipment to Hong Kong. On December 22, 2008, FedEx Security Specialist Peter Scott quarantined the packages at the FedEx warehouse at the Vancouver International Airport and reported the packages as "suspicious" to the Canadian Border Services Agency ("CBSA"). CBSA Officer Rahul Coelho inspected the packages and concluded that the components inside might be controlled within the meaning of Canada's Export and Imports Act ("EIPA").

---

[1] The following background facts are taken from Plaintiff's Complaint, Dkt. #1, and accepted as true for purposes of ruling on the Motion to Dismiss.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR LEAVE - 3

The Government of Canada subsequently launched an investigation into Plaintiff's father, Steve de Jaray. CBSA officers searched the business office of Apex Canada and the home of Steve de Jaray on February 13, 2009. The Government of Canada and the individual Defendants continued investigating Mr. de Jaray for more than a year. Despite certain flaws in the evidence (as alleged in the Complaint), George Webb, a manager of CBSA, told the Government of Canada and the United States Government that "this company has to be shut down." The Government of Canada and the individual Defendants proceeded to contact Apex's key customers and vendors. The Defendants also interrogated current and former employees numerous times, allegedly scaring most of them into leaving the company for fear of being connected to the alleged terroristic activity and arms dealing. Plaintiff contends that "Apex was ruined as a result of the baseless investigation." Dkt. #1 at 14. The company and the Apex USA subsidiary were ultimately shut down.

One year later, the Government of Canada and the individual Defendants filed criminal charges against Plaintiff de Jaray and her father. Plaintiff de Jaray was arrested on May 5, 2010. On May 28, 2010, the Government of Canada issued a press release announcing the charges. The Government of Canada also sent information to the U.S. Federal Bureau of Investigation to induce them to open an investigation into Ms. de Jaray, which allegedly continued from 2009 to 2013.

Ms. de Jaray had a multiple-year L1A Visa as an employer that allowed her to live and work freely in the United States. Given the events described above, she was stopped, searched, and interrogated every time she crossed the border coming home to Washington after visiting her family in Canada. Ms. de Jaray was allegedly forced by these events to leave her home in Washington and give up her L1A Visa.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR LEAVE - 4

On August 4, 2011, the Government of Canada directed that all criminal charges against Ms. de Jaray and her father be stayed and, later, dismissed. In November 2011, Ms. de Jaray's father filed a civil lawsuit against the Government of Canada for wrongful prosecution. In May 2013, in open court, the Government of Canada admitted wrongdoing in the investigation and criminal charges against Ms. de Jaray and her father. On November 22, 2013, the Government of Canada entered into a settlement with Ms. de Jaray's father. The Complaint does not identify any attempt by Ms. de Jaray to file a similar action in the Canadian courts. On November 27, 2013, the FBI dropped its investigation into Ms. de Jaray.

### III. DISCUSSION

**A. Legal Standard**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, Plaintiff's claims must be dismissed. *Id*. at 570.

**B. The Court's Jurisdiction under the FSIA**

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989) (internal quotation marks omitted)). Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts." 28 U.S.C. § 1604; *Nelson*, 507 U.S. at 355. A foreign state may be subject to suit in the United States if one of the exceptions set out in 28 U.S.C. § 1605 is established. But "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Id*.

Defendants argue in their Motion to Dismiss that "[t]here is no dispute that the Government of Canada, the Canadian Border Services Agency, and Global Affairs Canada are 'foreign states' as that term is defined in the FSIA." Dkt. #22 at 11 (citing 28 U.S.C. § 1603; Dkt. #1 at ¶¶ 11-13). Defendants argue that Plaintiff has the burden to offer evidence than an exception under the FSIA applies. *Id*. (citing *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 306-07 (9th Cir. 1997)). Defendants argue that the Complaint fails to identify any applicable exception under the FSIA, and that this alone would warrant dismissal under the 12(b)(6) standard. However, Defendants go on to argue why possible FSIA exceptions are invalid. Defendants argue that Plaintiff ultimately must attempt to rely on 28 U.S.C. § 1605(a)(5), the non-commercial tort exception, because her claims sound in tort and because Plaintiff's facts do not support other FSIA exceptions. *Id*. at 12. The non-commercial tort exception states that a foreign state is not immune from jurisdiction in United States courts in cases:

> not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment . . .

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR LEAVE - 6

28 U.S.C. § 1605(a)(5). There are two exceptions to this exception. According to the statute, the Court has no subject matter jurisdiction over:

> (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
>
> (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights;

28 U.S.C. § 1605(a)(5)(A) and (B).

Defendants argue that both of these exceptions to the exception apply to the facts of this case as pled. First, Defendants argue that the alleged actions of Defendants were discretionary in nature because it is "well established that 'decision[s] [on] how to investigate, who to investigate, and how to present evidence' are considered discretionary conduct." Dkt. # 22 at 13-14 (citing *Arteaga-Ruiz v. United States*, 164 F. Supp. 3d 1198, 1203 (D. Idaho 2016); *Sabow v. U.S.*, 93 F.3d 1445, 1452 (9th Cir. 1996) (such activities are "classic examples of discretionary conduct") (citation omitted); *Hilsenrath v. Swiss Confederation*, 2007 WL 3119833, at *5 (N.D. Cal. Oct. 23, 2007), *aff'd*, 402 F. App'x 314 (9th Cir. 2010) (Swiss government's freezing of plaintiffs' assets during criminal investigation falls within discretionary function exception; Swiss officials "had discretion in deciding whether they would conduct the investigation and whether or not to effect the freeze")). Defendants cite to the D.C. Circuit for the proposition that decisions as to "whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception." *Id.* at 14 (citing *Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983)). Defendants cite to *General Dynamics Corp. v. United States*, 139 F.3d 1280 (9th Cir. 1998) as

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR LEAVE - 7

having a similar fact pattern where the Ninth Circuit found the district court lacked subject matter jurisdiction. *Id*. Defendants argue that Plaintiff's claims against the Government of Canada "all arise out of an allegedly improperly motivated criminal investigation and prosecution" and that "[t]hese are prosecutorial actions that involve the discretion of the representatives of the Canadian Government." *Id.* at 15 (citing a Canadian decision, *The Queen v. Cook*, [1997] 1 S.C.R. 1113, ¶ 19 (Can.)).

Defendants also argue that the second exception to the non-commercial tort exception applies because Plaintiff's claims "all arise out of allegations of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Id*. at 16 (internal quotation marks omitted). Defendants cite to *Blaxland v. Com. Dir. of Public Prosecutions*, 323 F.3d 1198 (9th Cir. 2003) as being directly on point. In that case, the plaintiff sued various Australian agencies in the United States for malicious prosecution, abuse of process, intentional infliction of emotional distress, and false imprisonment, and his wife sued for intentional infliction of emotional distress and loss of consortium. *Blaxland*, 323 F.3d at 1202. The Ninth Circuit found the Blaxlands' claims of malicious prosecution and abuse of process were clearly barred by the FSIA, as were the claims of emotional distress and loss of consortium. *Id*. at 1203. The latter claims were barred since they "arise from the core claims and derive from the same corpus of allegations concerning his extradition," regardless of plaintiff's attempt to characterize them as claims not listed in the exception. *Id*. Defendants argue:

> Although Ms. de Jaray frames her claims in terms of negligence, improper supervision, and negligent and intentional infliction of emotional distress, her real complaints are two-fold: (a) the Government of Canada and its agents falsified key information, and used that falsified information to pursue a criminal prosecution, all motivated by improper ends; and (b) the

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR LEAVE - 8

> Government and its agents publicized the charges and misled U.S. law enforcement, again to achieve those same improper ends. This is exactly the fact pattern of *Blaxland*, which held as a matter of law that all such claims are in fact claims for malicious prosecution, abuse of process, libel, slander and misrepresentation, and as such, are barred by § 1605(a)(5)(B).

Dkt. #22 at 17.

In Response, Plaintiff argues that the burden is on Defendants to prove that the exceptions to the FSIA do not apply. Dkt. #31 at 5-6 (citing *O'Bryan v. Holy See*, 471 F. Supp.2d 784, 790 (W.D. Ky. 2007)). Plaintiff argues that the discretionary conduct exception to the non-commercial tort exception to the FSIA does not apply because the conduct alleged in the Complaint "was taken in violation of law and pursuant to a mandate and directive from the Government of Canada," and was therefore not discretionary. *Id*. at 7 (citing, *inter alia*, *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate."); *Limone v. U.S.*, 497 F.Supp.2d 143, 203 (D. Mass. 2007) ("[T]he discretionary function exception immunizes only the conduct of agents exercising judgment within their lawful discretion.")). Plaintiff argues that Defendants provided false reports and false information to U.S. law enforcement agencies, a crime under federal and state law. *Id*. at 8. In the alternative, Plaintiff argues that the acts of Defendants were not discretionary but were not protected by this exception because they were pursuant to a policy or mandate of the Government of Canada. *Id*. at 9 (citing *O'Bryan v. Holy See, supra*).

Plaintiff also argues that the malicious prosecution/abuse of process exception to the non-commercial tort exception does not apply. Plaintiff argues that these exceptions require damages arising out of the misuse of criminal proceedings. Dkt. 31 at 11 (citing *Moore v. United States*, 213 F.3d 705, 710 (D.C. Cir. 2000); *Thuillard v. United States*, 385 Fed. Appx. 650, 650-51 (9th Cir. 2010); *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR LEAVE - 9

2009)).  However, Plaintiff argues that she did not plead a claim for malicious prosecution and does not seek damages resulting from criminal proceedings in Canada because "the wrongful conduct of which Plaintiff complains arose out of the Government of Canada's conduct in the United States," and because the acts at issue occurred "before the indictment was filed."  *Id*. at 12.  Plaintiff argues that, unlike the fact patterns of *General Dynamics Corp*. or *Blaxland*, here "the damages arose before any charges were laid."  *Id*.

Plaintiff also argues that the Government of Canada waived its FSIA immunity by contemplating a role for the United States Court System in its investigation of Plaintiff on U.S. soil.  *Id*. at 13-14.  Plaintiff alleges that Canada requested assistance under the Inter-American Convention on Terrorism ("IACT"), which includes an agreement that "[a]ny person who is taken into custody or regarding whom any other measures are taken or proceedings are carried out pursuant to this Convention shall be guaranteed fair treatment, including the enjoyment of all rights and guarantees in conformity with the law of the state in the territory of which that person is present and applicable provisions of international law." *Id*. at 14.  Plaintiff argues that the Government of Canada thus accepted the application of U.S. law to govern its conduct and that this constitutes a waiver under the FSIA.  Plaintiff analogizes this case to *Siderman de Blake v. The Republic of Argentina*,  965 F.2d 699 (9th Cir. 1992).

Plaintiff also argues that the FSIA's commercial activity exception applies.  This exception states that a foreign sovereign is not immune in an action "based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR LEAVE - 10

1605(a)(2). Plaintiff argues that the Complaint alleges the Government of Canada was engaged in commercial activity when it was attempting to "secure contracts for military goods and services" for Canadian governmental agencies as well as private contractors. Dkt. #31 at 17. Plaintiff argues that the acts performed by Defendants include shutting down her company by harassing and intimidating Plaintiff and her employees and customers and acting to shut down Plaintiff's company to win favor with the U.S. and secure military contracts . *Id*. at 17-18.

On Reply, Defendants reiterate that Plaintiff has the burden to offer evidence than an exception under the FSIA applies. Dkt. #37 (citing *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1124-25 (9th Cir. 2010)). Defendants argue that the commercial acts exception does not apply because "Plaintiff has not alleged any commercial activity that is arguably adequate to carry her burden under FSIA," and that Plaintiff's complaint is really based on Defendants "harassing and intimidating [her] and her employees and customers," and investigating Plaintiff and her company and use of U.S. law enforcement in that effort. *Id*. at 4 (citing Plaintiff's Response brief). Defendants argue that investigating potential crimes, contacting witnesses, and prosecuting offenders are not commercial acts, but "emanate from the power inherent in sovereignty." *Id.* (citing, *inter alia*, *Saudi Arabia v. Nelson*, 507 U.S. 349, 361-62 (1993) ("a foreign state's exercise of the power of its police has long been understood . . . as peculiarly sovereign in nature. . . . Exercise of the powers of police and penal officers is not the sort of action by which private parties can engage in commerce.")). Defendants argue that they have not waived FSIA immunity, citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) and *Blaxland, supra*, and arguing that the holding in *Siderman* has been limited by the Ninth Circuit to situations in which foreign sovereigns use domestic U.S. courts and thereby subject themselves to that jurisdiction. Dkt. #37 at 5-6. Defendants again argue

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR LEAVE - 11

that the law enforcement conduct at issue was discretionary. *Id.* at 6-8.  More persuasively, Defendants argue that the misrepresentation/malicious prosecution/abuse of process exception to the non-commercial tort exception applies in this case and that Plaintiff is mischaracterizing the conduct on which her claims are based. *Id*. at 8.  Specifically, Defendants argue that:

> Every aspect of the Complaint states claims that "arise from" malicious prosecution, abuse of process, libel, slander, misrepresentation, and/or deceit. The Complaint alleges that Canadian officials supposedly falsified facts about the Seized Goods (deceit and misrepresentation); used that falsified information to conduct a criminal investigation (deceit and malicious prosecution); misled U.S. officials about the facts, thereby inducing them to participate in the investigation (deceit and misrepresentation); improperly indicted plaintiff (malicious prosecution) based on the same falsehood (deceit and misrepresentation); publicized the indictment, harming plaintiff's reputation (slander); threatened interviewees with criminal charges if they did not cooperate (abuse of process); and misled her company's customers, banks and employees by linking her to "terrorism" or "terroristic activity" and "arms dealing" (deceit and misrepresentation).

*Id.*  Defendants argue again that *Blaxland* is squarely on point.

As an initial matter, the Court agrees with Defendants that they have made a prima facie showing that the Government of Canada is a foreign state and that under controlling Ninth Circuit case law the burden shifts to Plaintiff to offer evidence that an exception to FSIA applies. *See Peterson*, 627 F.3d at 1124-25.  Plaintiff does not meet this burden and thus the burden does not shift back to Defendants.  The Court agrees that Plaintiff's Complaint fails to plead conduct by Defendants that falls under the commercial activity exception—Defendants alleged conduct clearly constitutes abuse of the police power to conduct an investigation rather than commercial activity. *See Saudi Arabia v. Nelson*, 507 U.S. at 361-62.  Plaintiff's efforts to characterize Defendants' actions as commercial activity are inconsistent with the facts as pled. The Court further agrees with Defendants that Plaintiff has failed to adequately plead facts to

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR LEAVE - 12

show waiver of immunity. Under *Argentine Republic v. Amerada Hess Shipping Corp.* and *Blaxland, supra*, Defendants' signing of the IACT and all other actions fail to explicitly contemplate waiving of the FSIA and instead contemplate that Defendants would be subject to U.S. laws including the FSIA; *Siderman* is inapplicable because Defendants did not avail themselves of U.S. Courts in this case. Turning to the two exceptions to the non-commercial tort exception, the Court concludes that the misrepresentation/malicious prosecution/abuse of process exception clearly applies in this matter. All aspects of Plaintiff's claims and facts "arise from" claims of malicious prosecution, abuse of process, libel, slander, misrepresentation, and/or deceit, even if Defendants' acts occurred before indictment or in the United States rather than Canada. Plaintiff's citations to *Thuillard* and *Lassiter* are not persuasive as those cases do not stand for the proposition that all damages under this exception must arise out of criminal proceedings rather than government actions prior to criminal proceedings. The Court finds *Blaxland* sufficiently analogous; all of Plaintiff's claims arise from the same alleged misrepresentation/malicious prosecution/abuse of process acts of Defendants. Accordingly, the Government of Canada Defendants are immune under the FSIA and this Court lacks subject matter jurisdiction over them.

**C. Immunity of Individual Defendants**

Defendants argue two bases for immunity for the remaining individual Defendants. First, Defendants argue the individuals are immune under the common law rule of immunity for acts committed in an official capacity ("Official Acts Immunity Doctrine"). Dkt. #22 at 18 (citing *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897); *Samantar v. Yousuf*, 560 U.S. 305 (2010); *Chuidian v. Philippine National Bank*; 912 F.2d 1095, 1101 (9th Cir. 1990)). Defendants cite to *Mireskandari v. Mayne*, 2016 WL 1165896 (C.D. Cal. Mar. 23, 2016) as

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR LEAVE - 13

factually analogous and cite to a second circuit case applying this common law to a case involving the FSIA and officials who have left office, *Matar v. Dichter*, 563 F.3d 9, 13 (2d Cir. 2009) ("whether the FSIA applies to former officials or not, they continue to enjoy immunity under common law"). *Id.* at 18-19. Second, Defendants argue that the Alien Tort Statute cannot provide subject matter jurisdiction for Plaintiff's claims. *Id.* at 20-24 (citing, *inter alia*, *Sosa v. Alvarez – Machain*, 542 U.S. 692, 724 (2004)).

In Response, Plaintiff discusses at length the basis for jurisdiction under the Alien Tort Statute. *See* Dkt. #31 at 18-19. However, Plaintiff's analysis of the common law rule of Official Acts Immunity is extremely narrow. Plaintiff argues:

> The "official acts" immunity does not help Defendants here. The "official acts" immunity does not apply to acts outside the scope of authority. [Footnote citation to *Chuidian, supra*] There is a question of fact as to whether the Individual Defendants were acting outside the scope of their authority when they violated the law.
>
> In addition, the Fourth Circuit has specifically recognized that official acts immunity does not apply to violations of *jus cogens*. [Footnote citation] … *Jus cogens* generally concerns egregious acts such as torture. [Footnote citation] The Supreme Court, however, has left open the discretion of district courts to determine the norms of international law. [Footnote citation] Although the Ninth Circuit has yet to rule on the application of "official acts" immunity to violations of international law, at least one federal district court in the Ninth Circuit has ruled that there is no such immunity. [Footnote citation] Plaintiff, here, alleged that the Individual Defendants acted in violation of international law. [Footnote citation to Complaint] For the same reasons that ATS jurisdiction attaches, "official acts" immunity does not.

*Id.* at 20-21.

On Reply, Defendants argue that Plaintiff's analysis on the Official Acts Immunity Doctrine is meritless and unsupported by the Complaint. Defendants point out that Plaintiff's statement that "[t]here is a question of fact as to whether the Individual Defendants were acting

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR LEAVE - 14

outside the scope of their authority" is made without citation to the Complaint and that the Complaint does not allege "any specific instance or manner in which any of the individual defendants acted outside their official capacity," and that this would be "incompatible with her allegations that the defendants acted to implement mandatory government policies and to achieve governmental goals." Dkt. #37 at 9-10. Defendants agree with Plaintiff that the Ninth Circuit has not adopted a *jus cogens* exception to the Official Acts Immunity Doctrine. *Id*. at 10. Defendants argue that the Court need not reach this issue because the Complaint fails to allege acts that could rise to a *jus cogens* violation. *Id*. Defendants go on to address Plaintiff's arguments for jurisdiction under the Alien Tort Statute.

The Court finds that it need not analyze the Alien Tort Statute if the Official Acts Immunity Doctrine applies to this case.[2] Consistent with the Court's findings above, the Court finds that the Complaint fails to allege specific instances where the individual Defendants acted outside their official capacity, and that amendment to include such instances would be inconsistent with the allegations that Defendants acted to implement mandatory government policies and to achieve governmental goals. *Chuidian*, cited by Plaintiff for the proposition that acts outside the scope of authority are not shielded, involved a defendant who allegedly "used his office for personal purposes." 912 F.2d at 1106. The court in *Chuidian* went on to note that the defendant in that case may have had a personal motive for his actions but the actions themselves were within his official duties and therefore upheld dismissal of claims against that defendant. The alleged facts of this case are similarly insufficient. The Court further finds that the Ninth Circuit has not adopted a *jus cogens* exception to the Official Acts Immunity Doctrine, and, even if it had, the acts alleged against Defendants fail to rise to the necessary

---

[2] Even if the Court were to analyze Plaintiff's claims under the Alien Tort Statute, the Court is not convinced that the alleged actions of the individual Defendants violated Plaintiff's "safe conduct" or the IACT under applicable case law.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR LEAVE - 15

egregiousness contemplated by the law of *jus cogens*. Accordingly, the individual Defendants are immune from suit under the Official Acts Immunity Doctrine.

### D. Act of State Doctrine, Forum Non Conveniens, International Comity

Having found that all Defendants are immune and that this Court lacks subject matter jurisdiction, the Court need not address the Act of State Doctrine, forum non conveniens,[3] or international comity.

### E. Leave to Amend

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Many facts in this matter are disputed, but this is not true of the basic facts relied on by the Court to establish the immunity of Defendants, *i.e.* the identity of Defendants and the basic description of their actions against Plaintiff. The Court finds that Plaintiff cannot allege different facts, consistent with the challenged pleading, which could establish this Court's subject matter jurisdiction given the legal rulings above. The Court will therefore dismiss Plaintiff's claims with prejudice.

### F. Plaintiff's Motion for Leave to Seek Discovery

The Court has determined that it lacks subject matter jurisdiction. Additional discovery will not change Plaintiff's existing claims as to the identity of Defendants or the basic nature of their actions against Plaintiff. Accordingly, the Court will deny Plaintiff's Motion as moot.

### IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

---

[3] This argument was withdrawn by Defendants. Dkt. #37 at 13.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING
PLAINTIFF'S MOTION FOR LEAVE - 16

1) Defendants' Motion to Dismiss (Dkt. #22) is GRANTED.  Plaintiff's claims are DISMISSED with prejudice.

2) Plaintiff's Motion for Leave to Seek Discovery (Dkt. #26 is DENIED as moot.

3) This case is CLOSED.

DATED this 5th day of January 2017.

*[signature]*

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE